(No. 12336.—Decree affirmed.)

FREDERICK S. SMITH *et al.* Appellants, *vs.* DIO L. GARBER, Appellee.

*Opinion filed December 18, 1918.*

1. DESCENT—*effect of section 2 of Statute of Descent, respecting illegitimates.* The effect of section 2 of the Statute of Descent, respecting illegitimates, is to abrogate the harsh rule of the common law that an illegitimate was the child of nobody and to make such illegitimate the child as well as the heir of its mother.

2. WILLS—*natural heirs will not be disinherited by dubious words.* A testator is presumed to know the law and to make his will in view of existing statutes, and natural heirs will not be disinherited by dubious or ambiguous words but will take under the will unless an intention to disinherit them is disclosed.

3. SAME—*when illegitimate child will take under a will.* A devise of a remainder to "the child or children" of a named niece of the testatrix will include an illegitimate child of such niece who was in being when the will was made, whose existence and relationship to the niece were known to the testatrix and who was the only child ever born to the niece, although she was a married woman at the time the will was made.

APPEAL from the Circuit Court of Carroll county; the Hon. JAMES S. BAUME, Judge, presiding.

E. E. WINGERT, FREDERICK S. SMITH, and A. F. WINGERT, for appellants.

F. J. STRANSKY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Carroll county dismissing for want of equity a bill filed for the construction of the will of Caroline Mark as to the interest taken thereunder by an illegitimate child of one of the devisees.

Caroline Mark was a woman of considerable wealth, residing in Mt. Carroll, in said county, at the time of her death, in 1900. Her estate consisted of some 1600 acres of land in said county and about $350,000 worth of personal property. Her will was dated in 1894 and was duly probated in the county court of said county. Under the provisions thereof the main portion of the personal property was given to trustees in trust for the maintenance of a home for aged women from Carroll and surrounding counties. A large portion of the real estate was given to various of her nephews and nieces and other relatives for life, and the remainder in said various tracts of land, after the death of the life tenant or tenants of such tracts, was given to the child or children of a certain one or more of the life tenants.

The sole question involved in this proceeding is as to the proper construction that should be given to clause 7 of said will, as to whether or not Dio L. Garber, the illegitimate child of Jane Gable, was intended to be included by the testatrix by the words "the child or children of Jane Gable," as used in the seventh clause of the will. Said clause so far as it bears on this question, reads as follows:

"*Seventh*—I give and devise unto William Russell, Nathaniel Russell and Jane Gable, brothers and sister, now of Butler, in the State of Ohio, the following described land, to-wit, [describing it,] for and during their joint lives and the lives or life of the survivors or survivor of them, to be held and used by them, and the survivors or survivor of them, as they or he or she shall see fit, except that the same shall not be mortgaged or otherwise incumbered. From and after the death of the survivor of them, it is my will, and

I hereby direct, that said land shall go to the child or children of Jane Gable and their heirs forever, in equal shares, provided that at the death of the survivor a child or children of hers shall be living. In case no child or children of hers shall be living, then it is my will that said land shall revert to and become a part of my estate hereinbefore devised to my said trustees and their successors or successor, in trust for the purpose hereinafter mentioned and fully set out."

Counsel for all parties to the litigation agree that if appellee, Garber, does not take this land it will become a part of the trust estate for the benefit of said home for aged women. It is stipulated in the record that neither William nor Nathaniel Russell was ever married or had children; that William died in 1904 and Nathaniel in 1914; that Jane Gable was born in 1854 and died July 16, 1917; that appellee was a child of Jane Gable, born January 26, 1874, and was her only child at the time the will was made, in 1894; that Jane Gable never had any other child born to her; that appellee's father was Michael Garber; that Jane Gable and Michael Garber were never married and that appellee was born out of lawful wedlock; that a few days after his birth he was taken by Michael Garber's folks and was raised and maintained by them thereafter and was never legally adopted by Jane Gable; that Jane Gable in 1892 was lawfully married to William Gable, who died in 1904, and that thereafter she married William Countryman, who survived her.

Counsel for both parties discuss at some length in their briefs the various decisions under the common law as to whether an illegitimate child is included within the term "child" used in a will. The rules laid down in the English cases and the earlier cases in this country are set forth at some length in Jarman on Wills, (vol. 2, *p. 217,) and are to the effect that the use of the word "children," without further identifying the objects of the gift, will not be taken to include illegitimate children, and that "it is clear that

the fact of there being no other than illegitimate children when the will takes effect or at any other period, so that the gift, if confined to legitimate children, has evidently failed for want of objects, does not warrant the application of the word 'children' to the former objects." Another learned author in this country says: "In the absence of evidence of a contrary intention it is conclusively settled that only legitimate children are entitled to take under a provision giving property to children *simpliciter.* * * * It is as though the word 'legitimate' were written in the will before the word 'children,' 'sons,' 'issue,' etc. This rule of construction is based upon the maxim of the civil law, *Qui ex damnato coitu nascuntur, inter liberos non computentur,* and although natural children who have acquired the reputation of being the children of the testator or of the person mentioned in the will, prior to the date of its execution, may under some circumstances be capable of taking under the description of 'children,' yet they are not permitted to take upon mere conjecture of intention." (2 Underhill on Wills, sec. 570.) "Natural children having acquired the reputation of being the children of a particular person prior to the date of the will are capable of taking under the description of 'children.' * * * But the will itself must show the testator's intention to include them under this description, either by express designation or necessary implication." (2 Williams on Executors,—7th Am. ed.—364.)

Under the common law rule it seems quite obvious that appellee could not be included in the term "child" as used in the will now under consideration. But most of the authorities just quoted are based on the theory of the common law that an illegitimate child was of kin to no one. "Sections 2 and 3 of our Statute of Descent were enacted for the purpose of obviating the undue severity of the common law and of erecting a rule more consonant with justice to an innocent and unfortunate class. Section 2 * * * abrogates the common law rule that an illegitimate is the child of

nobody and could not take property by inheritance, even from its own mother." (*Robinson* v. *Ruprecht*, 191 Ill. 424.) Under the common law an illegitimate was considered *filius nullius*. (1 Blackstone's Com. *459.) Under the statutes passed in this State in relation to illegitimate children, "an illegitimate person is recognized as the child of his mother, as regards the descent of property." (*Miller* v. *Williams*, 66 Ill. 91.) In *Bales* v. *Elder*, 118 Ill. 436, this court said that it was the purpose of the legislature in enacting the statute as to illegitimate children, to remove the common law disability of inheritance and place them more nearly on a level with legitimates. (See, also, *Jenkins* v. *Drane*, 121 Ill. 217; *Chambers* v. *Chambers*, 249 id. 126.) In *Robinson* v. *Ruprecht, supra,* this court said (p. 433): "The rule [of the common law] visited the sins of the parents upon the unoffending offspring, and could not long survive the truer sense of justice and broader sense of charity that came with the advancing enlightenment and civilization of the race."

While our statute does not state in so many words that an illegitimate child shall be considered the "child" of its mother but only that it shall be the "heir" of its mother, (Hurd's Stat. 1917, p. 1073,) yet, as indicated by the reasoning of the decisions of this court heretofore referred to, we are of the opinion that the spirit and intention of these statutory changes was that an illegitimate child should be considered the child of its mother; that the harsh restrictions placed upon such a child by the common law for the wrongs of its parents should be softened; that from being the child of no person it should become the child of its mother. The testator is presumed to know the law and to make his will in view of existing statutes. (*Lurie* v. *Radnitzer*, 166 Ill. 609; *Walker* v. *Walker*, 283 id. 11.) In construing a will it is an elementary rule that the natural heirs will not be disinherited by dubious or ambiguous words but that they will take under the will unless an intention is dis-

closed to disinherit them. (*Straw* v. *Barnes*, 250 Ill. 481.) "In the absence of anything in the will to the contrary, the presumption is that the ancestor intended that his property should go where the law carries it, which is supposed to be the channel of natural descent. To interrupt or disturb this descent or direct it in a different course would require plain words to that effect." (*Wright* v. *Hicks*, 12 Ga. 155; *Rivenett* v. *Bourquin*, 53 Mich. 10.) In the construction of wills the law favors the heir, (*Mills* v. *Teel*, 245 Ill. 483,) and favors that construction of a will which will make a distribution as nearly conform to the general rules of inheritance as the language will permit. (*Morrison* v. *Tyler*, 266 Ill. 308.) The primary rule in the construction of a will is to ascertain the meaning of the testator, and this means the general, primary intention. Technical rules will not be permitted to defeat such intention. In construing and interpreting wills we ought to follow those rules of construction that are most in harmony with the genius and laws of this country and the manners and customs of its people. (*Walker* v. *Walker, supra.*) "We ought rather to be guided by those that would most effectually do justice and not by such as would give an arbitrary and technical meaning to words never understood or contemplated by the testator; that may defeat all the objects of his beneficence, as manifested by the last solemn act of his life in disposing of his property to those he may deem most worthy of his bounty." (*Webbe* v. *Webbe*, 234 Ill. 442.) The intention of the testator is found by construing the words employed by him in the will itself in the light of his circumstances and surroundings. "The court is entitled to hear such extrinsic evidence of the surrounding circumstances as will put it in the place of the testator." (Page on Wills, sec. 817.) Evidence of the condition of testator's mind when he executed the will, and the state of his family and property, is admissible. (*Wallace* v. *Foxwell*, 250 Ill. 616.) "Parol evidence of the circumstances of testator's family, where his illegiti-

mate children claim, * * * is admissible. Thus, it may
be proved by parol that the person who is mentioned as
the parent had never been married and that he or she had
illegitimate children and that they were living at the date
of the execution of the will, and it may also be shown by
parol evidence that certain illegitimate children had, at or
before the date of the will, acquired the reputation of being
the children of the testator or of the person whose name
is mentioned in the will as the parent. Parol evidence is
always received to show whether the testator knew of the
existence of illegitimate children." (2 Underhill on Wills,
sec. 572.) While it is the intention of the testator, as shown
in the will, that is sought, the court in construing a will is
not bound to shut its eyes to the state of facts under which
the document was made. *Abrahams* v. *Sanders, 274* Ill. 452.

George F. Bucher, a former circuit clerk of Carroll
county, testified that he acted as Caroline Mark's business
agent for several years; that previous to the drawing of
the will she spoke to him about relatives she had in Ohio
and stated that the name of one was Jane Gable, and that
the only child Jane Gable had was a boy; that Nathaniel
and William Russell were bachelors. Jane Gable at the time
she was married was past forty, and the fact that appellee
was Jane Gable's child was known to the testatrix, and she
must also have known that the likelihood of Jane Gable,
who was then past forty, having other children was small.
She evidently intended that if such children were born they
should share equally with appellee.

Counsel for appellants argue that it is somewhat singu-
lar that if the testatrix intended to devise appellee any of
this property she did not name him specifically. There is
no evidence in the record that contradicts the testimony of
Bucher that she knew, at the time she executed the will,
of the existence of the appellee and of his relation to Jane
Gable. It is quite reasonable to presume that she intended
to include him under the word "child," and also intended

to include any other children of Jane Gable, if she should have any by her late marriage. This conclusion is entirely in accord with the rules of construction heretofore referred to.

The decisions of this court holding that an adopted child is included within the meaning of the word "child," as used in a statute, deed or will, tend to support the construction that we have placed upon clause 7 of the will. See *Butterfield* v. *Sawyer,* 187 Ill. 598; *Flannigan* v. *Howard,* 200 id. 396; *Wallace* v. *Noland,* 246 id. 535.

It has frequently been said by this court, quoting approvingly from *Gulliver* v. *Poyntz,* 3 Wils. 141, that while "cases on wills may serve to guide us with respect to general rules in the construction of devises in wills, yet unless a case be in every respect directly in point and agree in every circumstance with that in question it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." The language of the decision must always be considered with reference to the facts of that particular case and authorities referred to on those points and necessary to the determination of the case. (*O'Hare* v. *Johnston,* 273 Ill. 458, and authorities there cited.) Notwithstanding this controlling rule as to the weight of decisions in construing wills, we have endeavored to give to the numerous authorities cited by counsel the consideration that their application to the facts of this case requires. We do not believe that any single case cited is necessarily controlling as to the proper construction of the will here in question. The conclusion that we have reached, in our judgment, is in harmony with the genius and laws of this country and the manners and customs of the people, and under the rules laid down is the most reasonable conclusion that could be reached as to the intention of the testatrix in clause 7 of the will, construed in the light of the entire wording of the will. This being so, the decree of the circuit court will be affirmed.

*Decree affirmed.*