(No. 71139.—

HARRIS TRUST AND SAVINGS BANK, as Trustee, v. JOHN M. DONOVAN *et al.* (John M. Donovan, Appellant; Hallam Thomas Donovan, Appellee).

*Opinion filed September 19, 1991.—Rehearing denied December 2, 1991.*

BILANDIC, J., took no part.

John D. English and J. Timothy Eaton, of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellant.

Michael J. Dolesh and Fred J. Posont, of Keck, Mahin & Cate, of Chicago, and Frank J. Roan, of Sarasota, Florida, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The issue in this case is whether the illegitimate child of Thomas J. Donovan is entitled to a one-third interest in the family trust executed by Thomas J. Donovan. The circuit court of Cook County held that Thomas J. Donovan did not intend that the illegitimate child be a beneficiary under the family trust. The appellate court reversed and remanded for further proceedings. (203 Ill.

App. 3d 259.) We granted petitioner John M. Donovan's petition for leave to appeal (134 Ill. 2d R. 315).

Thomas J. Donovan (hereinafter decedent) died on August 24, 1982. Probate proceedings were initiated shortly thereafter, and an order declaring heirship determined that the heirs at law and next of kin of decedent were his wife, Marie A. Donovan, and his children John M. Donovan, Patricia D. O'Rourke and Thomas J. Donovan, Jr. Subsequently, on November 18, 1982, Hallam Thomas Donovan notified Harris Trust and Savings Bank, the trustee of decedent's trust and executor of decedent's will, that he too was an heir to decedent's estate. Hallam included a 1964 California decree adjudging Thomas J. Donovan to be his father and ordering decedent to pay child support until Hallam reached the age of 21. According to the record, decedent did pay monthly child support to Hallam's mother and also paid Hallam's medical and educational expenses.

Less than 30 days prior his death, decedent executed the "Thomas J. Donovan Trust," dated July 26, 1982, and the "Thomas J. Donovan Will," dated July 29, 1982. Under decedent's trust instrument, the trust estate was divided into a marital trust and a family trust. Decedent's wife, Marie, was the sole beneficiary of the net income from both trusts during her lifetime. Upon her death, the marital trust, less any estate taxes and certain expenses, was to be added to the family trust.

Pursuant to paragraph 3.2 of the trust instrument, the family trust was divided accordingly:

"3.2 Upon my wife's death, or upon my death if she does not survive me, *the Trustee shall divide the Family Trust into separate trusts of equal value, creating one trust for each child of mine other than Thomas J. Donovan, Jr.* then living and one trust for the descendants then living, collectively, of each deceased child of mine other than Thomas J. Donovan, Jr. I intentionally make

no provision for my son, Thomas J. Donovan, Jr., or his descendants under this paragraph. The Trustee, subject to the following article, shall distribute each trust created for the descendants of a deceased child per stirpes to such descendants." (Emphasis added.)

Under paragraph 5.7 of the trust instrument, "children" and "descendants" were defined:

"5.7 For purposes of this instrument, 'children' and 'descendants' include *only lawful blood children* and descendants and legally adopted children and descendants; and the 'income beneficiaries' of a trust are the persons eligible to receive current income distributions." (Emphasis added.)

Under decedent's will, decedent bequeathed his personal effects to his wife, Marie, if she survived him. If she did not survive him, decedent's personal effects would go to "[his] children other than Thomas J. Donovan, Jr. who are then living, to be divided between them in shares of substantially equal value as they agree." *Decedent further stated, "My only children now living are John M. Donovan, Patricia D. O'Rourke and Thomas J. Donovan, Jr."* After disposing of his personal effects, decedent poured the residue of his estate into the Thomas J. Donovan Trust.

On April 27, 1988, Marie Donovan died, and the remaining assets from the marital trust were added to the family trust. Harris Trust, as trustee, then filed a complaint for declaratory judgment asking the trial court to declare that the family trust be divided into two separate trusts of equal value, one for John M. Donovan and one for Patricia D. O'Rourke. Both John M. Donovan and Patricia D. O'Rourke filed answers which agreed with the relief sought by the trustee. Hallam Thomas Donovan filed an answer disagreeing with the trustee, and asking that the trial court divide the family trust

into three equal trusts for the benefit of himself, John M. Donovan and Patricia D. O'Rourke.

Subsequently, the trial court granted the trustee's motion for judgment on the pleadings pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The trial court specifically held: that there is no ambiguity in the Thomas J. Donovan Trust dated July 26, 1982; that decedent intended, after the death of his wife, that the family trust be divided into two trusts for the benefit of John M. Donovan and Patricia D. O'Rourke; and that decedent did not intend that either Thomas J. Donovan, Jr., or Hallam Thomas Donovan be beneficiaries of the family trust.

The appellate court held that the trial court erred in concluding that there is no ambiguity in the Thomas J. Donovan Trust and that decedent intended to disinherit Hallam. (203 Ill. App. 3d at 264-65.) The appellate court apparently found the trust ambiguous because the original declaration of heirship did not include Hallam Thomas Donovan, indicating that decedent might not have advised the draftsman of Hallam's existence and relationship to decedent. (203 Ill. App. 3d at 264.) The appellate court stated that "[i]f the draftsman was not aware of the fact that Hallam was the son and an heir of the decedent, how could he possibly provide for his disinheritance." (203 Ill. App. 3d at 264.) In addition, the appellate court concluded that decedent failed to either disinherit Hallam expressly, or to disinherit Hallam by necessary implication. Here, the appellate court points to the sentence in the will which reads, "My only children now living are John M. Donovan, Patricia D. O'Rourke, and Thomas J. Donovan, Jr." The appellate court stated that this sentence is "an obvious factual error and not an express or implied disinheritance of his son, Hallam." (203 Ill. App. 3d at 265.) Consequently, the appellate

court remanded the cause to the trial court for further proceedings. We now reverse the appellate court, and affirm the trial court's decision.

Initially, we note, as the appellate court did, that decedent's son Thomas J. Donovan, Jr., was clearly and unequivocally disinherited by decedent. He is not a party to this appeal. Further, the trustee moved for judgment on the pleadings pursuant to section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Under a section 2—615 motion, the trial court must examine all pleadings on file, taking as true the well-pleaded facts, and reasonable inferences to be drawn therefrom, set forth in the opposing party's pleadings. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 553; *TDC Development Corps. v. First Federal Savings & Loan Association* (1990), 204 Ill. App. 3d 170, 173.) A judgment on the pleadings is proper only if questions of law and not of fact exist after the pleadings have been filed. *Walker*, 65 Ill. 2d at 553.

The first purpose in construing a trust is to discover the settlor's intent from the trust as a whole, which the court will effectuate if it is not contrary to public policy. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513.) In construing trusts in this regard, the court will apply the same rules of construction that are applicable in construing wills. (*First National Bank*, 85 Ill. 2d at 513.) The intention of the settlor is to be ascertained by examining the entire trust and by giving to the words employed their plain and ordinary meeting. (See *Feder v. Luster* (1973), 54 Ill. 2d 6, 11.) If possible, the court should construe the will or trust so that no language used by the testator is treated as surplusage or rendered void or insignificant. (See *Weilmuenster v. Swanner* (1949), 404 Ill. 21, 24.)

"Every word, phrase and clause in a will should be given effect, if possible, and where one construction of a will

would render a portion of it meaningless and another construction would give effect to all provisions and all language, the construction giving effect to the latter construction will be adopted." (*Feder*, 54 Ill. 2d at 11.)

Further, the heirs of a testator cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly either by express words or by necessary implication. *Dahmer v. Wensler* (1932), 350 Ill. 23, 28.

After analyzing the Thomas J. Donovan Trust, we find that Hallam Thomas Donovan was disinherited by necessary implication. Clearly, decedent did not expressly disinherit Hallam, as he did with Thomas J. Donovan, Jr. Nonetheless, the language in paragraph 5.7 of the trust unambiguously implies that decedent did not intend that Hallam take under the trust. Paragraph 5.7 reads, "For purposes of this instrument, 'children' and 'descendants' include *only lawful blood children* \*\*\*." (Emphasis added.) The law in Illinois is clear that the word "lawful" under these circumstances is synonymous with "legitimate." (See *Stearns v. Stearns* (1941), 376 Ill. 283, 289 (holding that the term "lawful grandchildren" in the testator's trust equals "legitimate grandchildren"); *Marsh v. Field* (1921), 297 Ill. 251, 253 (stating that the term "lawful issue" as used in the ninth clause in decedent's will excludes illegitimate children).) Given that "lawful blood children" is synonymous with "legitimate children," the necessary implication is that Hallam is not entitled to take under the family trust which is to be divided "into separate trusts of equal value for each child of mine other than Thomas J. Donovan, Jr."

Our interpretation of the word "lawful" as being synonymous with the word "legitimate" is consistent with how other States have interpreted this issue. (See *Traders Bank v. Goulding* (Mo. 1986), 711 S.W.2d 872, 875;

*Will of Hoffman* (1976), 53 A.D.2d 55, 60-61, 385 N.Y.S.2d 49, 53; *Central Trust Co. v. Skillin* (1912), 154 A.D. 227, 229-30, 138 N.Y.S. 884, 886; *Presley v. Hanks* (Tenn. App. 1989), 782 S.W.2d 482, 489.) In addition, the Random House College Dictionary states that "lawful" is defined as "recognized or sanctioned by law; legitimate." See also Black's Law Dictionary 811 (5th ed. 1979) (defining legitimate as "[t]hat which is lawful").

Hallam argues that the term "lawful blood children" has no established meaning in Illinois, and contends that the petitioner has failed to cite one case from Illinois or any other jurisdiction where that precise phrase has been used. Although we have been unable to find an Illinois case in which the words "lawful blood children" were used, numerous cases exist in which the term "lawful children" has been used in a will or trust. See *Comisky v. Moore* (1962), 26 Ill. 2d 494; *Ellis v. Bartlett* (1961), 21 Ill. 2d 332; *Kost v. Foster* (1950), 406 Ill. 565; *Crowley v. Engelke* (1946), 394 Ill. 264; *Bailey v. Koehler* (1922), 305 Ill. 25; *Murrell v. Industrial Comm'n* (1920), 291 Ill. 334.

Hallam also argues that recent developments in the constitutional law and statutory changes made by State legislatures have radically altered the meaning of the word "lawful" as it applies to illegitimate children. As support for this claim, Hallam cites *Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459. In *Trimble v. Gordon*, the Supreme Court held unconstitutional as violative of the equal protection clause of the fourteenth amendment a provision of the Illinois Probate Act which allowed illegitimate children to inherit by intestate succession only from their mothers. *Trimble*, 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459.

Hallam's argument has no merit. We recognize that, historically, illegitimate children have not been afforded the same rights and privileges as legitimate children.

For instance, at common law, an illegitimate child was perceived to be *filius nullius*, the son of nobody, and thus was not entitled to take property by inheritance. (See *Smith v. Garber* (1918), 286 Ill. 67, 70-71.) Along the same line, a testamentary gift to "children" was treated the same as if the testator had used the words "legitimate children." (See *Smith*, 286 Ill. at 69-70.) It was as though the word "legitimate" was written into the will before the word "children." Recent changes in the law have attempted to soften the burden on illegitimate children. Following *Trimble*, an illegitimate child is eligible under State intestate statutes to inherit from his or her father, provided the decedent has acknowledged paternity of the illegitimate person or has been adjudged the father of the illegitimate person. See *Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459; see also Ill. Rev. Stat. 1987, ch. 110½, par. 2—2.

However, these changes have not affected the testator's right to leave his property to some or all of his children, whether legitimate or not. In this case, decedent unambiguously expressed his desire to exclude Hallam from taking under the trust instrument. Decedent modified the term "children" in his trust with the words "lawful blood." The plain and ordinary meaning of these words is such that illegitimate children are excluded from taking under decedent's trust.

Hallam also argues that the sentence in the will which reads, "My only children now living are John M. Donovan, Patricia D. O'Rourke, and Thomas J. Donovan, Jr.," is factually incorrect and suggests that decedent might not have told the drafter of the trust or will of Hallam's existence. Consequently, Hallam argues that decedent failed to resolve in his own mind how Hallam should be treated under the trust and will. Further, Hallam argues that even if decedent did not want to expressly disinherit him as he did with Thomas J. Dono-

van, Jr., because he was too embarrassed to admit that he had an illegitimate child, decedent could have manifested his intention to disinherit Hallam by merely changing the words of his will. For instance, Hallam suggests that decedent could have changed the will to read, *"The children of my marriage with Marie Donovan now living are ***."* (Emphasis added.)

We disagree. "When there are two or more instruments creating, defining, or relating to a trust, they may, or should, be construed together to effectuate the intention of the creator ***." (90 C.J.S. *Trusts* §164, at 32 (1955).) In this case, although decedent's will was executed three days after decedent's trust, we believe the will must be read in conjunction with the trust to effectuate decedent's intent in disposing of his property. In article II of the will, decedent expressly stated that after his personal property was disposed of, the remainder of his property should be given to the trustee of the "Thomas J. Donovan Trust ***, *which Agreement is now in existence."* (Emphasis added.) Decedent intended for the will and trust to be read together to facilitate the disposal of his property. Consequently, the sentence in the will which states that decedent's "only children now living" are his three legitimate children is not factually incorrect when read in light of paragraph 5.7 of the trust. In paragraph 5.7 of the trust, decedent defined his children as being "only lawful blood children." Our previous analysis demonstrated that this definition implicitly excluded Hallam. Thus, when decedent identified his three legitimate children in his will as his "only children now living," decedent was correct and consistent given the definition of "children" in paragraph 5.7 of the trust. Further, Hallam's argument that decedent could have disinherited him by using different language is irrelevant. The fact that decedent could have used other

words to disinherit Hallam does not render the method decedent used to disinherit Hallam ambiguous.

For the foregoing reasons, we reverse the judgment of the appellate court, and affirm the judgment of the trial court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.