2024 IL App (1st) 230982-U
Order filed: April 25, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0982

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| *In re* ESTATE OF DIANE M. WOLNIEWICZ, Deceased, | Appeal from the Circuit Court of Cook County. |
| Citation Petitioner-Appellant | |
| | No. 2020 P 5063 |
| (Robert LeRoy Ferrara, as father and next friend of Holly Ferrara and Hailey Ferrara, | |
| Interested Parties-Appellees, | Honorable Carolyn Gallagher, Judge, presiding. |
| and | |
| Robert LeRoy Ferrara, individually, and Judy La Rue, | |
| Interested Parties | |
| and | |
| The Virginia E. La Rue Trust, through its successor trustee, Judy La Rue; and The Dona J. Kowalski Trust, through its successor trustee, Richard N. Mueller, | |
| Citation Respondents). | |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: Denial of appellant's citation to recover assets is affirmed, where circuit court correctly construed trust language with respect to the proper disposition of proceeds from the sale of property.

¶ 2    Citation Petitioner-Appellant, the Estate of Diane M. Wolniewicz, Deceased (Estate), appeals from an order denying a citation to recover assets it filed in this matter. For the following reasons, we affirm.

¶ 3    Diane died on July 18, 2020, and a petition for probate of will and for letters testamentary was filed on September 17, 2020. Diane's will was admitted to probate, an independent executor of the Estate was appointed, and letters of office were issued.

¶ 4    On March 10, 2021, a $148,130 claim was filed against the Estate by interested parties - appellees, Robert LeRoy Ferrara, as father and next friend of Holly Ferrara and Hailey Ferrara (Holly and Hailey). Therein, it was asserted that Holly and Hailey were beneficiaries under two separate trusts that were attached to the claim, the Virginia E. La Rue Trust (Virginia Trust) and the Dona J. Kowalski Trust (Dona Trust). It was further asserted that these two Trusts held title to real property commonly known as 22765 Long Grove Road, Deer Park, Illinois (Residence). The claim asserted that pursuant to the Trusts, Holly and Hailey were entitled to 50% of the net proceeds of the sale of the Residence (Proceeds), the residence was sold in September 2020 yielding net proceeds of $296,260, and that therefore Holly and Hailey were entitled to $148,130 of those Proceeds. The claim was made against the Estate because, "[u]pon information and belief, notwithstanding the above, the referenced portion of the sale proceeds—in whole or in part—has been or may be distributed to the captioned estate, which is not entitled to same."

¶ 5    On the same day, two additional, separate $74,065 claims were made against the Estate by Robert LeRoy Ferrara, individually (Robert), and by Virginia's sister, Judith Ann La Rue, both proceeding *pro se*. Robert and Judith's claims largely echoed the claim filed on behalf of Holly and Hailey, with the exception that Robert and Judith each claimed to also be beneficiaries under

the Virginia and Dona Trusts, and that pursuant thereto each was entitled to 25% of the Proceeds. On April 2, 2021, each of the claimants were notified that their claims had been disallowed by the Estate. The circuit court thereafter entered an order directing the parties to proceed with discovery and submit pretrial memoranda, and scheduled a hearing on the three claims against the Estate.

¶ 6    Pretrial memoranda where thereafter filed by Holly and Hailey, as well as by the Estate. In addition, the parties stipulated to certain facts for the purpose of the hearing on the three claims against the Estate. Therein, the parties stipulated that:

- For decades, Virgina La Rue and Dona Kowalski owned and lived together at the Residence;

- On July 3, 2003, Virginia and Dona caused to be recorded a quitclaim deed for the Residence from themselves to themselves, creating a joint tenancy;

- On August 15, 2014, Virginia executed the Virginia Trust and Dona executed the Dona Trust, with true, complete and accurate copies of those Trusts attached as exhibits to the stipulation;

- Also on August 15, 2014, and following the creation of the Trusts, Virginia and Dona executed a warranty deed in trust for the Residence—a true, complete and accurate copy also attached as an exhibit—resulting in the joint tenancies of Virginia and Dona being dissolved and the Virginia Trust and the Dona Trust each thereafter holding a one-half (50%) undivided interest in the Residence as tenants in common;

- Virginia died on February 21, 2015, Dona continued to reside at the Residence until her own death on November 18, 2019, and the Residence was thereafter sold on

September 21, 2020; and

- Half of the Proceeds was being held by the Virgina Trust, and half by the Dona Trust. The trustees of each Trust "agreed to abide by any final order entered in this matter regarding the disposition of the one-half of the Proceeds currently in its possession."

¶ 7    To avoid unnecessary duplication, and considering the *de novo* standard of review applicable on appeal (*infra* ¶ 17), the specific, relevant language of the two Trusts will only be laid out in full below, in the context of our analysis of the issues raised on appeal. At this point, it is sufficient to note that the two Trusts contained largely identical language generally providing—in part—that: (1) the survivor of Virgina and Dona would have the right to remain living in the Residence pursuant to the terms of a separate "Residence Trust" provided for in the Trusts, (2) upon the death of the survivor of Virgina and Dona, the Residence Trust would terminate and the Residence would be sold, (3) 50% of the Proceeds were to be distributed to Robert and Judith, and 50% of the Proceeds would be distributed to Diane, and (4) if, however, Diana did not survive the "sale event" with respect to the Residence, the 50% of the Proceeds otherwise granted to Diane would instead be paid to Holly and Hailey.

¶ 8    A hearing on the claims was held on August 4, 2021, with the parties stipulating that the claims were to be considered by the circuit court solely on the stipulated facts and the "four-corners" of the Trusts. Only if the circuit court found that the Trusts were ambiguous, and/or the matter could not be adjudicated without additional extrinsic evidence, would the parties then seek to conduct additional discovery and participate in a future evidentiary hearing.

¶ 9    The matter was taken under advisement, and on November 9, 2021, the circuit court entered a written order denying all three claims against the Estate. Therein, the circuit court concluded that

because the Proceeds were being held by the two Trusts and had never been distributed to the Estate: (1) the Proceeds were not assets of the Estate, (2) the disposition of those Proceeds and the claimant's right to those Proceeds were therefore not questions properly before the court, (3) since the Proceeds were not part of the Estate, claimants had no viable claim against the Estate, and (4) therefore the three claims against the Estate must fail.

¶ 10    On April 11, 2022, the Estate filed a Petition for Leave to Issue Citation to Recover Assets. In the petition, the Estate acknowledged the court's prior order denying the three claims, but noted that "there remains a stalemate between the Estate on one hand and the Claimants on the other hand" with respect to the proper distribution of the Proceeds. The Estate therefore sought to issue a citation to recover assets pursuant to section 5/16-1 of the Probate Act of 1975 (755 ILCS 5/16-1 (West 2022)), which permits an estate to ask the court to order a citation to issue for the appearance of any person whom the petitioner believes "to have in his possession or control any personal property, books of account, papers or evidences of debt or title to lands which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his representative," and authorizes the court to "determine all questions of title, claims of adverse title and the right of property and *** enter such orders and judgment as the case requires." The Estate contended that a "citation to recover the Proceeds directed to the respective successor trustees of the Virginia Trust and the Dona Trust would vest this Court with jurisdiction to substantively resolve the disputed ownership of the Proceeds as between the Estate and the Claimants on the merits once and for all."

¶ 11    On April 19, 2022, Holly and Hailey responded by filing a motion to dismiss the Estate's petition, contending that it was improper considering the circuit court's prior determination that the Proceeds were not assets of the Estate. On June 3, 2022, the circuit court entered an agreed

order granting the Estate's petition to issue a citation to recover assets and ordering that the citation issue *instanter*, taking the motion to dismiss with the citation, and setting a briefing schedule on the motion to dismiss. After the citation was issued and the motion to dismiss was fully briefed, another agreed order was entered providing that if the motion to dismiss was denied, the circuit court should address the merits of the citation based upon the stipulated facts and the previously filed pretrial memoranda. The matter was set for hearing on October 5, 2022, a hearing was held on that day, and the matter was taken under advisement.

¶ 12    On May 1, 2023, the circuit court entered a written order in which it denied the motion to dismiss the petition for leave to issue a citation to recover assets, but denied the citation to recover assets on the merits. The circuit court first acknowledged that, with respect to the motion to dismiss, it had previously ruled that the Proceeds were not assets of the Estate in the order entered on November 9, 2021. However, the court noted "[t]hat decision denied the Claimants' claims because the Proceeds were not Estate *assets at that time*. It explicitly declined to address the question of the Proceeds' ultimate disposition, was not a 'judgment' as to ownership, and is not 'other affirmative matter' that would preclude a citation to recover or defeat the Petition for Citation. Therefore, the Motion will be denied." (Emphasis in original.)

¶ 13    On the merits of the citation, the circuit court rejected the Estate's reading of the language contained in the Trusts and concluded that, based upon the language of the Trusts and the stipulated facts, the claimants and not the Estate were entitled to the Proceeds. The court reached this conclusion because the Residence Trust provisions applied to the Proceeds and because Diane did not survive the sale of the Residence, such that the 50% of Proceeds that would have otherwise been distributed to her should instead be distributed to Holly and Hailey. The citation was therefore denied.

¶ 14    On May 29, 2023, the Estate filed a notice of appeal from the denial of its citation to recover assets pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), which provides for interlocutory appeals as of right with respect to a "judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." On May 31, 2023, the circuit court granted the Estate's motion to stay enforcement of its May 1, 2023, judgment pending appeal, pursuant to Illinois Supreme Court Rule 305(b) (July 1, 2017).

¶ 15    A court's primary concern in construing a trust instrument is to discover the intent of the grantor. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). In determining that intent, the court must first consider the plain and ordinary meaning of the words used. *Eychaner v. Gross*, 202 Ill. 2d 228, 256 (2002). We determine the intent as expressed by the instrument's language as opposed to the intent presumed to have been in the testator's mind. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 21. Extrinsic evidence may be admitted to determine intent only if the document is ambiguous. *Altenheim German Home v. Bank of America, N.A.*, 376 Ill. App. 3d 26, 32 (2007). Language will be considered ambiguous only if it is reasonably susceptible to multiple interpretations. *Id.* ¶ 22. A trust is not ambiguous merely because the parties disagree about its meaning. *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993).

¶ 16    "In construing trusts, courts should give effect to each word and phrase and should decline to adopt a construction which would render any portion of the language meaningless or nonsensical." *Id.* at 615-16. Courts should also construe trusts so that no language "is treated as surplusage or rendered void or insignificant." *Harris Trust and Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). "When the language of a trust is clear, the court should not modify the document or create new terms." *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 135.

¶ 17    "The construction of a trust presents an issue of law that we review *de novo*." *Chicago Trust Co. v. Brierton*, 2022 IL App (1st) 210741, ¶ 17. In addition, the legal effect of stipulated facts is also question of law. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 392 (1994). Where the facts before the circuit court were stipulated by the parties and the court made a legal conclusion based on those facts, the standard of review is also *de novo*. *MQ Construction Co., Inc. v. Intercargo Insurance Co.*, 318 Ill. App. 3d 673, 679 (2000).

¶ 18    We begin our analysis by quoting the specific language of the two Trusts that is relevant to this appeal. As noted above, the Trusts contain largely identical language. We will therefore quote from the Virgina Trust, and then note any relevant differences in the language contained in the Dona Trust. We begin with Article 3 of the Virgina Trust, which is entitled "Gifts Upon My Death." The relevant sections of Article 3 provide as follows:

"On my death, the trustee shall distribute the following gifts from the trust estate:

* * *

3.3 Gifts of Personal Residence. If my friend **Dona J. Kowalski** survives me and at the time of my demise, she is residing in the residence commonly known as 22765 Long Grove Road, Deer Park, Illinois, I give said residence to the trustee to hold in a separate trust known as the "Residence Trust."

3.4 Gift of Balance of the Trust Estate. I give the balance of the trust estate in shares of equal value to my surviving sisters, **Judith Ann La Rue and Emma Louise Fox,** provided that if a sister of mine predeceases me but a descendant of the sister survives me, the trustee shall distribute the share that would have been allocated for the deceased sister, if living, per stirpes to the sister's descendants who survive me." (Emphasis in original.)

¶ 19　The Dona Trust contains nearly identical language, simply replacing Virgina for Dona as the potential surviving beneficiary of the Residence Trust in Article 3.3, and replacing the beneficiary language of Article 3.4 with the following: "I give the balance of the trust estate my cousin **Diane Wolniewicz**, or if she does not survive me, to **Holley Ferrara and Hailey Ferrara** equally or the survivor of them." (Emphasis in original.)

¶ 20　Article 4 of the Virgina Trust is entitled "Residence Trust," and provides in relevant part as follows:

> 4.1 The provisions of this Article shall apply if I have any interest in real property that was used by my friend **Dona J. Kowalski** and me as a residence, at the time of my death ('the residence'). 'Residence' refers to the residence commonly known as 22765 Long Grove Road, Deer Park, Illinois.

> 4.2 Retention and Use of Residence. I authorize the trustee to retain the residences for my friend **Dona J. Kowalski's** life notwithstanding that this residence may constitute a large part or all of the principal of the trust and may lack the diversification or productivity ordinarily considered prudent for trust investments. My friend **Dona J. Kowalski** may continue to use and occupy the residence rent free, provided that she pays all taxes, assessments, insurance premiums, ordinary repair bills, and other expenses of protecting and maintaining the residence. As long as she pays expenses as required the trustee shall not sell the residence except as provided in the following paragraphs.

> 4.3 Sale and Purchase of Residence. Upon my friend **Dona J. Kowalski's** written request, the trustee shall sell all or any part of these residence for its fair market value and shall retain the proceeds of the sale as principal. Upon my friend **Dona J. Kowalski's** written request, the trustee shall purchase or construct any new residence my friend shall

request out of the proceeds of any sale under this paragraph and shall thereafter hold the new residence as 'the residence' subject to the provisions of this Article. My friend **Dona J. Kowalski** may at any time purchase the residence from the trustee for one half (½) of its fair market value, determined by the Trustee as of the date my friend delivers to the trustee a written purchase offer.

4.4 Destruction to Residence. The trustee may hold the proceeds of insurance paid to the trustee as a result of damage to or destruction of the personal residence in a separate account. Such insurance proceeds may be used to purchase a new personal residence (or repair or replace the existing personal residence, as the case may be). If the Residence Trust is holding insurance proceeds not used to purchase a new personal residence (or repair or replace the existing personal residence, as the case may be) said unused proceeds shall be distributed as set forth in paragraph 4.5 (a) and (b), hereof.

4.5 Termination of Residence Trust. The Trustee shall continue to hold the residence in trust as long as the Residence continues to be used as the personal Residence, of my friend **Dona J. Kowalski.** The Residence Trust shall terminate upon the first to occur of (a) the Residence ceases to be used as the personal Residence of my friend **Dona J. Kowalski,** or (b) the death of my friend **Dona J. Kowalski.** Upon such termination, the trustee shall take possession of the Residence and sell it for its then fair market value as determined by the Trustee and distribute the proceeds from sale, as follows:

(a) one half, ½ of the net proceeds after customary real estate sale expenses to be divided equally between my sister **Judith Ann La Rue** and **Robert LeRoy Ferrara.** If either of them predeceases the sale event as set forth in paragraph 4.5, but a descendant of [theirs] is then surviving, the trustee shall distribute the share

that would have been allocated for the deceased beneficiary, if living, per stirpes to those descendants who survive said sale event, or if no descendants then to the survivors and

(b) the remaining one half, ½, of the net proceeds after customary real estate sale expenses to **Dona J. Kowalski's** cousin, **Diane Wolniewicz** \*\*\* and if **Diane Wolniewicz** does not survive the sale event as set forth in paragraph 4.5 then in that event to **Holley Ferrara and Hailey Ferrara** \*\*\*, to share equally or to the survivor of them, if one of them should not then be surviving."

¶ 21    The Dona Trust contains nearly identical language, once again simply replacing Virgina for Dona as the potential surviving beneficiary of the Residence Trust.

¶ 22    It is worth repeating that the stipulated facts establish that: (1) Virgina and Dona lived at the residence together for decades, executing a quitclaim deed for the Residence from themselves to themselves, creating a joint tenancy, in 2003, (2) then, in 2014, Virgina executed the Virginia Trust and Dona executed the Dona Trust at the same time on the same day, (3) the two Trusts contain nearly identical language, and (4) on the same day, immediately after the Trusts were executed, Virgina and Dona executed a warranty deed in trust for the Residence transferring a one-half (50%) undivided interest in the Residence to the Virginia Trust and the remaining one-half (50%) undivided interest in the Residence to the Dona Trust.

¶ 23    It is also important to note that in construing a trust a court applies the same rules of construction that apply to wills and other contracts. *Stein*, 252 Ill. App. 3d at 611. The general rule is, " 'in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes

of the law, one contract.' " *Peters & Fulk Realtors, Inc. v. Shah*, 140 Ill. App. 3d 301, 305 (1986) (quoting *Tepfer v. Deerfield Savings and Loan Ass'n*, 118 Ill. App. 3d 77, 80 (1983)). " 'Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect * * *.' " *Tepfer*, 118 Ill. App. 3d at 80 (quoting 17 Am. Jur .2d Contracts § 264). More specifically, " '[w]hen there are two or more instruments creating, defining, or relating to a trust, they may, or should, be construed together to effectuate the intention of the creator.' " *Harris Trust*, 145 Ill. 2d at 176 (quoting 90 C.J.S. Trusts § 164, at 32 (1955)).

¶ 24    Considering these stipulated facts and legal authority, it is evident that the creation of the Trusts and the transfer of ownership to the Residence to the two Trusts in 2014 compromised a single transaction, such that the two Trusts must be construed together to effectuate the intentions of Virgina and Dona. Furthermore, we find that the language of the Trusts—as properly construed together—is clear and unambiguous, and when the stipulated facts are applied to that language the circuit court correctly denied the Estate's claim against the Proceeds and properly denied its citation to recover assets.

¶ 25    More specifically, we find that the Article 3.3 of the Trusts clearly evidences an intent that if either Virgina or Dona survived the other, and was still living at the Residence, then the Residence was to be transferred "to the trustee to hold in a separate trust known as the 'Residence Trust.' " Article 4.2 of the Trusts clearly evidences an intent that the trustee was then to retain the Residence in the Residence Trust, to be used and occupied by the survivor of Virgina or Dona for the survivor's life. As it happened, Virgina died in 2015, while Dona was still residing at the Residence. As such, a Residence Trust was created for Dona's benefit, and pursuant to that Residence Trust she continued to live at the Residence until her own death in 2019.

¶ 26    Upon Dona's death in 2019—which occurred while she resided at the Residence—the Residence Trust terminated pursuant to Article 4.5 of the Trusts. Also pursuant to Article 4.5, upon the termination of the Residence Trust the Residence was to be sold and the Proceeds distributed as specified in Articles 4.5(a) and 4.5(b). Under Articles 4.5(a) and 4.5(b), so long as they survived "the sale event as set forth in paragraph 4.5," 50% of the Proceeds were to be distributed equally to Judith and Robert, with the remaining 50% of the Proceeds to be distributed to Diane.

¶ 27    The Trusts do not specifically define the phrase "the sale event as set forth in paragraph 4.5," the event Judith, Robert and Diane must survive to be entitled to a distribution of the Proceeds. However, reading Article 4.5 of the Trusts as a whole, it is evident that this language refers to the sale of the Residence upon the termination of the Residence Trust. Article 4.5 specifically provides that: "Upon such termination, the trustee shall take possession of the Residence and sell it for its then fair market value as determined by the Trustee and distribute the proceeds from sale." The "sale event" cannot refer to either of the events triggering the termination of the Residence Trust specified in Article 4.5, as by the clear terms of the Trusts the "sale" of the Residence could not occur prior to the termination of the Residence Trust. Moreover, the "sale event" must refer to and include the sale of the Residence, as without such a sale there would be no Proceeds to distribute.

¶ 28    Here, is undisputed that Judith and Robert survived the sale of the residence entitling them to their equal share of 50% of the Proceeds, and it is stipulated that Diane did not. Therefore, under Article 4.5(b) of the Trusts, the distribution of 50% of the Proceeds that would otherwise go to Diane instead must be distributed to Holly and Haley. Therefore, the circuit court correctly denied the Estate's claim against the Proceeds and properly denied its citation to recover assets.

¶ 29    In reaching this conclusion, we necessarily reject several additional arguments raised by the Estate on appeal. We do so for two reasons. First, the Estate's arguments focus on individual words, phrases or clauses of the Trusts, without considering the entirety of those documents. However, it "is improper to select a few words from a document and read them out of context. When construing a trust, we cannot fix upon each of its provisions in isolation but must instead consider the document as a whole in order to arrive at the true intent of the settlor." *Peck v. Froehlich*, 367 Ill. App. 3d 225, 229 (2006). Second and similarly, the Estate's arguments rely upon reading the two Trusts separately, rather than together. For the reasons explained above (*supra* ¶ 23), this is also improper here where the execution of the two Trusts and the transfer of the ownership of the Residence to the Trusts amounted to a single transaction.

¶ 30    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 31    Affirmed.