In re George R. McCOY, Debtor.

Donald E. Johnson, not individually, but solely as Trustee for the Estate of George R. McCoy, Plaintiff,

v.

George R. McCoy, individually and as Trustee for the Judith McCoy Family Trust, Defendant.

Marion Leslie McCoy, Robert Stewart McCoy and Lara McCoy, Interveners as Cross–Plaintiffs and Cross–Defendants.

Bankruptcy No. 00 B 02630.
Adversary No. 00 A 01052.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 12, 2002.

Donald E. Johnson, Hollis and Johnson, Chicago, IL, for Plaintiff.

Whitman H. Brisky, Lindenbaum Coffman Kurlander & Brisky, Ltd., Chicago, IL, for Defendant.

Stephen B. Engelman, Engelman & Smith, Evanston. IL, trustee.

### MEMORANDUM OPINION ON ESTATE'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the Chapter 7 bankruptcy case of Debtor George R. McCoy ("Debtor"). The Chapter 7 Trustee Donald E. Johnson ("Trustee") filed this proceeding against the Debtor George R. McCoy both individually and in his capacity as trustee for the Judith McCoy Family Trust ("Trust"). Pursuant to 11 U.S.C. § 541(a), the Complaint seeks turnover of the value and assets of the Trust to the Plaintiff and to Debtor's estate here. The Trustee also seeks an accounting of Trust assets and income.

Count I alleges that the Trust is an invalid self-settled trust, and is therefore property of the Debtor's Chapter 7 bankruptcy estate under 11 U.S.C. § 541(a). Count II asserts that Debtor possesses a general power of appointment under the Trust and therefore the Trust's assets are property of the estate pursuant to 11 U.S.C. § 541(a). Count III avers that the Trust must terminate by operation of law under the doctrine of merger. Count IV alleges that the Trust is an invalid spendthrift trust, and thus the Trust's assets are property of the estate pursuant to 11 U.S.C. § 541(a). Count V alleges that Debtor received income or assets from the Trust on the Petition filing date and thereafter. Accordingly, Count V prays for Debtor to give an accounting as to Trust assets and income pursuant to 11 U.S.C. § 541(a)(5)(A) and § 542(a).

The Interveners, Marion Leslie McCoy, Robert Stewart McCoy, and Lara McCoy ("Interveners"), filed a Cross Complaint. Count I of their Amended Cross Complaint seeks declaration that the Trust is not property of Debtor's Chapter 7 bankruptcy estate pursuant to 11 U.S.C. § 541(a) or § 541(b)(1). Count II alleges that Debtor as trustee of the Trust has failed to provide Interveners with an inventory or proper accounting. In addition, Count II avers that as trustee, Debtor has committed waste by making payments to himself beyond the terms of the Trust. Count II also seeks an order declaring Interveners creditors of Debtor's bankruptcy estate. In Count III, Interveners alleged that Debtor has failed to make distributions to them according to the terms of the Trust. They seek removal of Debtor as trustee and damages for his asserted wrongs.

Donald E. Johnson, Trustee for the Estate of George R. McCoy, moved for summary judgment on all counts of his Complaint. The Interveners filed a Cross Motion for Summary Judgment seeking determination on Count I of their Amended Cross Complaint and Counts I through IV of the Trustee's Complaint. In turn,

Debtor filed his Cross Motion for Summary Judgment on Counts I through IV of the Trustee's Complaint.

For reasons stated herein, the Trustee's motion is allowed on Counts IV and V of his Complaint and the Trustee will be granted Summary Judgment on those Counts and also on Count I of Interveners' Amended Cross Complaint. Also, the Motions of Defendant and Cross Plaintiffs for Summary Judgment with respect to Count V of the Trustee's Complaint are each denied, and that Count must be set for trial as to the accounting that is due. Since granting Summary Judgment on Count IV is dispositive of the overarching issue of whether the Trust is property of Debtor's estate, the case will be set for status to seek views of the parties as to whether Trustee's Counts I through III and the other Counts filed by Interveners are moot and should be dismissed.

## BACKGROUND

### Local Bankruptcy Rule 402

Local Bankruptcy Rule 402 defines the procedural framework of a motion for summary judgment. The moving party must submit a statement of material facts that support the moving party's position that there is no genuine issue, and thereby entitles the movant to judgment as a matter of law. Local Bankr.R. 402.M. In turn, the nonmoving party must submit responses to the moving party's facts, as well as any material facts to which the nonmoving party contends there is no genuine issue and which support denial of the motion. Local Bankr.R. 402.N. If the opposing party submits additional material facts under 402.N(3)(b), the moving party may then submit a concise reply in the same format used for its initial statement of material facts under 402.M. If the moving party fails to submit such a reply, all material facts set forth in the statement filed by the nonmoving party will be deemed admitted. The rule requires each party to include precise references to the affidavits, parts of the record, and other materials that each party relies upon in its statement. Local Bankr.R. 402.M.

Strict compliance with Local Rule 402 is the standard, not the exception. *See, e.g., Banner Oil Co. v. Bryson,* 187 B.R. 939, 944–45 (Bankr.N.D.Ill.1995). If a party makes an assertion and fails to point to supporting documentation, the assertion will not be credited. Likewise, when a party makes bald denials without proper support to the record or otherwise, such denials are treated as admissions. Local Bankr.R. 402.M.

### Undisputed Facts

The following list of undisputed facts was derived from the statements of material facts submitted by the parties which were adequately supported by the record. While some are not necessary to the Partial Summary Judgment ruled on below, those relate to other counts not yet disposed of.

1. On January 28, 2000 ("Petition Date"), George R. McCoy ("Debtor") filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code. Trustee's 402.M at ¶ 1.

2. On the Petition Date the Debtor was the sole trustee of the Judith McCoy Family Trust ("Trust"). Trustee's 402.M at ¶ 2.

3. The intervener parties ("Interveners") to this action are Marion McCoy, Debtor's daughter; Robert McCoy, Debtor's son; and Lara McCoy, Debtor's granddaughter. Trustee's 402.M at ¶ 3.

4. Debtor resides at 4950 South Chicago Beach Drive # 9B in Chicago, Illinois. Trustee's 402.M at ¶ 9.

5. On the Petition Date, Debtor filed Schedules of Assets that excluded the assets owned by the Trust. Trustee's 402.M at ¶ 10. Debtor has yet to amend his Schedule of Assets to include the assets of the Trust. Trustee's 402.M at ¶ 11.

6. Judith McCoy signed her Will before witnesses on April 19, 1989, and the instrument has never been amended. Trustee's 402.M at ¶ 12.

Though the will did not give Debtor any express power of appointment or Trust assets, nor any express power to revoke or amend the Trust, it did give him free discretion to spend all Trust assets for any purpose he desired. Relevant portions of testator Judith McCoy's will which established the Trust provide:

ARTICLE IV

Trust Dispositive Provisions

[Paragraph 1 omitted.]

2. The Family Trust shall be held, administered and distributed in accordance with the following provisions:

(a) The trustee shall pay all the net income of the Family Trust to my spouse in convenient installments at least as often as quarter-annually during his life.

(b) *The trustee may in its discretion pay to my spouse, or for his benefit, so much or all of the principal of the Family Trust as the trustee from time to time determines to be required or desirable for his health, maintenance and support. The Trustee need not consider the interests of any other beneficiary in making distributions to my spouse or for his benefit.* Although *my primary concern is for my spouse's health, maintenance and support,* the trustee *may in its discretion* during the life of my spouse *pay to, or use for the benefit of,* one or *more of my descendants* to the exclusion of one or more of them so much of the principal of the Family Trust *as the trustee from time to time determines to be required* for their health, education, maintenance and support.

(c) Upon the death of my spouse after my death, or upon my death if my spouse does not survive me, the trustee shall divide the Family Trust, *as then constituted,* into separate shares, as follows:

(i) 37.5% for my son, ROBERT, if then living;

(ii) 37.5% for my daughter, ·MARION, if then living;

(iii) 37.5% for my granddaughter LARA GWIN McCoy, if then living.

[Emphasis supplied].

\* \* \*

ARTICLE VI

Withholding And Administrative Provisions

[Paragraphs 1–5 omitted.]

6. No interest under this instrument shall be transferable or assignable by any beneficiary or be subject during his life to the claims of his creditors or to any claims for alimony or for the support of his spouse. This paragraph shall not restrict the exercise of any power of appointment.

7. Debtor valued the Trust assets at $595,000, net of liabilities. Trustee's 402.M at ¶ 14. On the Petition Date, the Trust owned a cooperative apartment at 4950 South Chicago Beach Drive # 9B in Chicago, Illinois ("Real Estate") and substantial stock interests ("Stock"). Trustee's 402.M at ¶ 15.

8. The assets originally owned and controlled by Debtor, which comprise the

source of the Trust assets, were given to Judith McCoy by the Debtor. Trustee's 402.M at ¶ 20.

9. For most of the last 30 years, the Debtor's occupation included estate planning. Trustee's 402.M at ¶ 21.

10. Debtor was married to Judith McCoy from 1944 to 1991. Trustee's 402.M at ¶ 22. During the marriage, Judith McCoy was not employed, and she primarily engaged in activities related to being a housewife and volunteer. Trustee's 402.M at ¶¶ 23–24. During her marriage, Judith McCoy did not own a business and she did not own substantial assets prior to her marriage to Debtor. Trustee's 402.M at ¶ 25.

11. Prior to 1976, Debtor and Judith McCoy owned real estate located in the Beverly area of Chicago. Trustee's 402.M at ¶ 28. This real estate was acquired with assets initially owned or controlled by Debtor. Trustee's 402.M at ¶ 29.

12. In 1976, Debtor and Judith McCoy became joint owners of a cooperative apartment ("Real Estate") located at 4950 South Chicago Beach Drive in Chicago, Illinois. Trustee's 402.M at ¶ 30.

13. Mortgage and maintenance payments for the Real Estate derived from assets initially owned and controlled by Debtor. Trustee's 402.M at ¶ 31. In addition, Judith McCoy did not fund the acquisition, mortgage payments, or the maintenance of the Real Estate, with any assets initially owned or controlled by her. Trustee's 402.M at ¶ 32.

14. Debtor transferred his interest in the Real Estate to Judith McCoy on March 14, 1980. Debtor's 402.N(3)(b) at ¶ 33.

15. Judith McCoy died on January 10, 1991. Trustee's 402.M at ¶ 35. The Trust was implemented that same year. Trustee's 402.M at ¶ 36.

16. Debtor was designated as the executor for Judith McCoy's will. Trustee's 402.M at ¶ 37.

17. The Trust is a testamentary trust. Trustee's 402.M at ¶ 38.

18. The terms of the Trust require Debtor to make installment payments of all of the net income of the Trust to himself at least quarter annually. Trustee's 402.M at ¶ 39. Debtor is the only income beneficiary of the Trust. Trustee's 402.M at ¶ 17.

19. The terms of the Trust grant Debtor, as sole trustee, the option of disbursing the principal of the Trust to the Children or for their benefit. Trustee's 402.M at ¶ 42.

20. The Trust permits disbursement of the income of the Trust only to Debtor, or for Debtor's benefit, during his lifetime. Trustee's 402.M at ¶ 43.

21. Debtor, as sole trustee of the Trust, has authority to "borrow money for any purpose" from the Trust. Trustee's 402.M at ¶ 45.

22. In 1992, Debtor remarried to Elizabeth L. McCoy. Trustee's 402.M at ¶ 46. In 1993, divorce proceedings commenced regarding Debtor's marriage to Elizabeth McCoy. Trustee's 402.M at ¶ 47.

23. In 1996, Debtor as trustee of the Trust and on behalf of the Trust obtained a $200,000 loan from First Security Bank of Chicago, now Delaware Place Bank, secured by the Real Estate owned by the Trust in order to fund a $165,000 payment to settle his divorce from Elizabeth L. McCoy. Trustee's 402.M at ¶ 48.

24. Debtor made a $165,000 disbursement from this loan to facilitate the settlement of hostile divorce proceedings which were affecting Defendant's mental and

emotional well being. Trustee's 402.M at ¶ 49.

25. Debtor has been the sole resident at 4950 South Chicago Beach Drive # 9B in Chicago, Illinois (the "Real Estate") since January 1996. Trustee's 402.M at ¶ 51.

26. There has been no change of the Trust's beneficiaries since its inception. Trustee's 402.M at ¶ 52.

27. Debtor was a beneficiary of the Trust as of the Petition Date. Trustee's 402.M at ¶ 53.

28. No income of the Trust was ever paid or disbursed to, or for the benefit of, the Children. Trustee's 402.M at ¶ 54.

29. None of the individuals listed as Children have received disbursements to or for their benefit from the Trust exceeding $10,000 in any one calendar year. Trustee's 402.M at ¶ 55.

30. Debtor, as trustee for the Trust, is the sole decision maker for the disposition of the Trust's assets and investments. Trustee's 402.M at ¶ 56. Debtor is also the sole decision maker for the Trust regarding disbursements therefrom. Trustee's 402.M at ¶ 57.

31. The Interveners Children make no decisions regarding disbursements from the Trust or disposition of Trust assets and investments. Trustee's 402.M at ¶¶ 58, 59.

32. Exhibit 1a, offered by the Trustee, reflects the Inventory and Accounting signed by Debtor as Executor for the Estate of Judith McCoy. The first page of Exhibit 1a is an accurate list of Judith McCoy's assets as of her date of death, January 10, 1991. Trustee's 402.M at ¶¶ 60–61.

33. Asset 1 of the Exhibit 1 is the Trust's Real Estate. Trustee's 402.M at ¶ 63.

34. Exhibit 1a lists asset 4—"Dundee Real Estate"—which is a land contract sale asset relating to real estate in which the Debtor originally held an ownership interest. Trustee's 402.M at ¶ 64. The Dundee Real Estate had a value of $173,616 as of the date of Judith McCoy's death. Trustee's 402.M at ¶ 65. The remaining amount owed on the Dundee Real Estate contract for sale as of Judith McCoy's death was $173,616. Trustee's 402.M at ¶ 67.

35. Exhibit 1b includes documentation reflecting the assignment transfer of Debtor's interest in the Dundee Real Estate to Judith McCoy on the same date Judith McCoy's will was dated, April 19, 1989. Trustee's 402.M at ¶ 66.

36. The Dundee Real Estate was originally purchased in 1966 with the source of funds being earnings of George R. McCoy. Trustee's 402.M at ¶ 68.

37. Debtor negotiated the sale of the Dundee Real Estate after the April 19, 1989, transfer of his interest therein to Judith McCoy. Trustee's 402.M at ¶ 69. The sale price of the Dundee Real Estate was approximately $250,000. Trustee's 402.M at ¶ 70.

38. Over $75,000 was paid from the Dundee Real Estate buyer to the seller after April 19, 1989. Trustee's 402.M at ¶ 71.

39. Counsel for Debtor also represented Judith McCoy in 1989. Trustee's 402.M at ¶ 72.

40. Judith McCoy was diagnosed with terminal leukemia at sometime between 1989 and 1990. Trustee's 402.M at ¶ 73. In early 1990, Judith McCoy was hospitalized as a result of the leukemia. Trustee's 402.M at ¶ 74.

41. Asset 6 on Exhibit 1a "Pacific Mutual Money Market" was an Individual Re-

tirement Account in the name of Judith McCoy with a value of $16, 187 as of her date of death and was funded by Debtor as he was working during his marriage to Judith McCoy. Trustee's 402.M at ¶ 75.

42. Asset 8 on Exhibit 1a reflects a $25,000 contribution to the Chicago Theological Seminary, and thus did not go into the Trust. Trustee's 402.M at ¶ 76.

43. Exhibit 1c is the federal estate tax return filed by George R. McCoy as executor of his wife's estate. Trustee's 402.M at ¶ 77.

44. The initial assets funding the Trust amounted to $579,745. Trustee's 402.M at ¶ 78.

45. Schedules B and C of Exhibit 1c reflect the breakdown of assets flowing into the Trust from the Judith McCoy estate. Trustee's 402.M at ¶ 79.

46. Exhibit 1, page 3, contains the Trust's Inventory and Accounting as of March 1, 1995, which lists assets and current values of those assets. Trustee's 402.M at ¶ 80.

47. Schedule E of Exhibit 1c is a list of personal property held jointly between the Debtor and Judith McCoy as of her date of death. Trustee's 402.M at ¶ 81. Debtor is unaware of how the personal property held jointly between himself and Judith McCoy was obtained individually or jointly. Trustee's 402.M at ¶ 82.

48. The Bechstein Piano ("Piano"), valued at $25,000, was jointly owned by Debtor and Judith McCoy at the date of Judith McCoy's death. Trustee's 402.M at ¶ 83.

49. Debtor did not list the Piano as an asset on his Chapter 7 Schedule of Assets as last amended. Trustee's 402.M at ¶ 85.

50. As of May 2001, Debtor remains in possession of the Piano. Trustee's 402.M at ¶ 87.

51. On December 31, 1999, the Piano was listed as an asset of the Trust, valued at $25,000. Trustee's 402.M at ¶¶ 88–89.

52. The Piano was insured for $25,000. Trustee's 402.M at ¶ 90.

53. The Tax Return for the Estate includes the Piano as "Description of property interests passing to surviving spouse." Trustee's 402.M at ¶ 84. On December 31, 2000, the Piano was valued at zero on the Trust list of assets. Trustee's 402.M at ¶ 92. Debtor has no knowledge why the Piano is valued at zero on December 31, 2000. Trustee's 402.M at ¶ 93.

54. Tom Henderson, Debtor's accountant, testified that Debtor told him the Piano was no longer in the trust as of December 31, 2000. Trustee's 402.M at ¶ 94.

55. Robert McCoy saw a 1995 appraisal of the Piano by Keylard & Sons listing a value of $60,000, but the Piano has some damage reducing its value today. Trustee's 402.M at ¶ 95.

56. As of the filing date of the Chapter 7 case, the Trust held substantial stock investments at Uhlmann Investments. Trustee's 402.M at ¶ 96.

57. The Trust had income during the 180 day period after the Petition in the form of stock dividends. Trustee's 402.M at ¶ 98.

58. The Trust made other disbursements during the 180 day period after the Petition in an amount exceeding $52,000. Trustee's 402.M at ¶ 99.

59. Debtor is the person most knowledgeable about the funding and administration of the Trust. Trustee's 402.M at ¶ 100.

60. Debtor, as trustee for the Trust, is not able to produce a check register reflecting Trust transactions. Trustee's 402.M at ¶ 101.

61. Debtor asserts that Henderson, his accountant, is the person to contact to determine Trust withdrawals for the year 1999 and after. Trustee's 402.M at ¶ 102.

62. Henderson contends that Debtor is the person most familiar with the Trust's receipts, disbursements, and assets, and not himself. Trustee's 402.M at ¶ 103.

63. Henderson, a CPA, has been the tax accountant for the Trust since 1992. Trustee's 402.M at ¶¶ 104–105.

64. Henderson is also Debtor's personal tax accountant. Trustee's 402.M at ¶ 106.

65. In response to subpoena of the bankruptcy estate, Henderson produced documentation including evidence of the Trust's opening a Rodman & Renshaw account with a deposit of $163,238.07 in January, 1992. Trustee's 402.M at ¶ 107. This amount can be traced back from the Trust to the Dundee Real Estate sale proceeds. Trustee's 402.M at ¶ 108.

66. Henderson relies on documentation submitted to him and the Debtor for guidance when determining assets in the Trust for tax purposes. Trustee's 402.M at ¶ 109.

67. Henderson prepared Exhibit 1e for the Trust, which includes a list of assets which the Debtor contends were in the Trust as of December 12, 1999, and the values for same. Trustee's 402.M at ¶ 110.

68. Henderson prepared Exhibit 3 for the Trust, which includes a list of assets which the Debtor contends were in the Trust as of December 31, 2000, and the values for same. Trustee's 402.M at ¶ 111.

69. Henderson has never seen a check register for the Trust and has no reason to believe the Trust has one. Trustee's 402.M at ¶ 112.

70. Henderson prepared the 1999 income tax returns for the Trust, as set forth in Exhibit 18. Trustee's 402.M at ¶ 113.

71. The Trust has paid out over $33,000 to the IRS for withholding taxes, based on the Trust's gross income for the year 2000 and after. Trustee's 402.M at ¶ 114.

72. The Trust's 2000 federal income tax return has not been filed, and the Trust's tax liability for that year has not yet been determined. Trustee's 402.M at ¶¶ 115–16.

73. Debtor was married to Judith McCoy from 1944 until her death on January 10, 1991. Debtor's 402.N(3)(b) at ¶ 118.

74. On April 19, 1989, Judith McCoy executed her will which contained provisions implementing the Trust. Debtor's 402.N(3)(b) at ¶ 119.

75. Upon Judith McCoy's death, the Trust was created and funded by operation of the will. Debtor's 402.N(3)(b) at ¶ 120.

76. The assets owned by Judith McCoy at the time of her death which funded the Trust and were the source of the assets in the Trust as of Debtor's bankruptcy petition date (January 28, 2000) were as follows:

| Asset | Value |
| --- | --- |
| (1) Unit 9B–Powhatan | $352,500 |
| (2) Mass. Company Money Market Account No. 0060004570 | $ 5,398 |
| (3) Mass. Company CD Account No. 0078011364 | $ 5,011 |
| (4) Installment Note–Valenta | $173,616 |
| (5) LaSalle Bank CD | $ 15,251 |
| (6) Pacific Mutual Money Market Account No. 00208185600 | $ 16,187 |

Debtor's 402.N(3)(b) at ¶ 121.

77. Item (1) is a coop apartment in a building located at 4950 South Chicago Beach Drive, Chicago, Illinois which was purchased by Debtor and Judith McCoy as joint tenants on June 30, 1976. Debtor's

402(N)(3)(b) at ¶ 122. On March 14, 1980, Debtor transferred his interest in the coop apartment located at 4950 South Chicago Beach Drive, Chicago, Illinois to Judith McCoy succeeding as sole owner until her death. Debtor's 402.N(3)(b) at ¶ 123.

■ 78. Items (2), (3), and (5) were funds received by Judith from her great aunt, Inez Pierson who died on February 27, 1990. Debtor's 402.N(3)(b) at ¶ 124.[1]

79. Item (4) was the balance owed on the promissory note given for the purchase of certain real property located in Dundee, Illinois ("Dundee Property") which constituted the corpus of a land trust known as the Harris Trust and Savings Bank Trust No. 321087 ("Land Trust"). Debtor's 402.N(3)(b) at ¶ 125. The Dundee Property was purchased by Debtor and made the corpus of the Land Trust on January 10, 1966. Debtor's 402.N(3)(b) at ¶ 126.

80. On April 19, 1989 Debtor assigned over to Judith McCoy all of his beneficial interest in the Land Trust. Debtor's 402.N(3)(b) at ¶ 128.

81. Item (6) was Judith McCoy's IRA account and was funded by Debtor over a number of years prior to 1989. Debtor's 402.N(3)(b) at ¶ 129.

82. During the 180 day post-petition period, tax withholdings from the Trust amounted to $15, 985.10. Trustee's 402.M at ¶ 149.

83. The $10,000 of Trust Disbursements were first transferred from the Trust's assets to Debtor's consulting firm, George R. McCoy & Associates, Inc., in early February 2000. Trustee's 402.M at ¶ 150.

84. The two checks listed on Exhibit F to Debtor's Affidavit, totaling $10,000, were both drawn on the bank account of Debtor's consulting firm and both checks were signed by Debtor. Trustee's 402.M at ¶ 151.

### Disputed Issues

The following contested issues of fact or mixed questions of fact and law were revealed by the parties submissions, but do not prevent entry of summary judgment as to the counts ruled on:

1. Whether Asset 7 listed on Exhibit 1a was initially used to fund the composition of the Trust. Trustee's 402.M at ¶ 62; Debtor's 402.N(3)(b) at ¶ 62.

2. Whether Debtor maintained dominion and control of assets which ultimately became property of the Trust which he transferred to Judith McCoy. Trustee's 402.M at ¶¶ 18, 40; Interveners' 402.N(3)(b) at ¶¶ 18, 40.

3. Whether the transfer by Debtor to Judith McCoy of those assets which ultimately became property of the Trust was absolute and irrevocable and all present and future dominion and control over such transferred assets was relinquished by debtor. Debtor's 402.N(3)(B) at ¶ 141.

4. What amount did Debtor receive from the Trust during the 180 day post-petition period. Trustee's 402.M at ¶¶ 142–148; Debtor's 402.N(3)(B) at ¶¶ 142–148.

1. The Trustee's denial of facts stated in ¶ 78 was not responsive to Debtor's statement of fact. The Trustee points out that the Debtor admitted in his Answer to the Trustee's Complaint that all Trust assets were originally owned and controlled by him. Trustee's 402.M at ¶ 19, 124. The Trustee argues that Debtor should be bound by his Answer, and also asserts that "Debtor's deposition testimony reflects his individual right to a portion of the assets received from the aunt in that he advanced funds for the aunt's medical expenses." Trustee's 402.M at ¶ 19, 124. Since the Trustee has set forth mere arguments, he has inadequately controverted Debtor's statement of fact and the statement is deemed admitted.

5. What amount was Debtor entitled to receive from the Trust during the 180 day postpetition period. Trustee's 402.M at ¶¶ 142–148; Debtor's 402.N(3)(B) at ¶¶ 142–148.

6. Whether the value of the Piano was included as an asset of the Trust at the time of its creation despite the fact that the Trust did not purchase the Piano from Debtor. Trustee's 402.M at ¶ 86; Interveners' 402.N(3)(b) at ¶ 86.

7. Whether asset 8 of Exhibit 1a, which is valued at $25,000, represents the Piano. Trustee's 402.M at ¶ 86; Interveners' 402.-N(3)(b) at ¶ 86.

## DISCUSSION

### *Jurisdiction*

The court maintains jurisdiction over this case pursuant to 28 U.S.C. § 1334(b). Since this adversary proceeding pertains to determination of what assets are property of the bankruptcy estate and seeks orders to recover property of the estate, it is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (E).

### *Standards for Summary Judgment*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Bankr.P. 7056 (integrating Fed.R.Civ.P. 56). This standard mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ In seeking a grant of summary judgment the moving party must identify "those portions of the 'pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* If the movant meets this burden, the nonmoving party cannot rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the nonmovant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record, all reasonable inferences must be drawn in favor of the nonmovant; however, "we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

### *Count IV of Amended Complaint and Count I of Cross Complaint: The Trust's Spendthrift and Anti Alienation Provisions*

■ Property of a bankruptcy estate is far-reaching and generally includes "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). When a bankruptcy debtor is a beneficiary of a trust containing spendthrift or anti-alienation provisions, whether that debtor's interest in the trust is property of the bankruptcy estate turns on whether the

spendthrift provision is enforceable under applicable non-bankruptcy law. 11 U.S.C. § 541(c)(2); *In re Goldberg*, 98 B.R. 353, 357–8 (Bankr.N.D.Ill.1989) (holding that valid spendthrift trusts are excluded from the debtor's bankruptcy estate). Accordingly, whether this Debtor's beneficial interest in the Trust is excluded from property of the estate under § 541(c)(2) must be determined by non-bankruptcy law. The parties concede, through their arguments, that Illinois' law controls.

■ In support of his Cross Motion for Summary Judgment, Debtor sets forth three arguments for the position that the Trust's foregoing anti-alienation provisions are valid and enforceable.[2] First, he argues the Article VI, ¶ 6 of the Will prohibits transfer or assignability of any interest in the Trust by any beneficiary while also expressly exempting the Trust from claims creditors. Second, Debtor argues that he does not have exclusive dominion and control over the Trust corpus necessary to invalidate the spendthrift provision. Third, Debtor contends that because he did not settle and retain a right of revocation over the Trust, the spendthrift provisions should not be invalidated. Therefore, Debtor argues under criteria for determining whether a valid spendthrift trust exists as set forth in *Matter of Perkins*, 902 F.2d 1254, 1257 (7th Cir. 1990), that he is entitled to summary judgment:

> "To determine whether a trust qualifies as a spendthrift trust under Illinois law, courts examine the following characteristics: (1) whether the trust restricts the beneficiary's ability to alienate and the beneficiary's creditors' ability to attach the trust corpus; (2) whether the benefi-

ciary settled and retained the right to revoke the trust; and (3) whether the beneficiary has exclusive and effective dominion and control over the trust corpus, distribution of the trust corpus and termination of the trust."

As discussed here, however, the third criteria directly and critically applies here.

■ Illinois law has long recognized and enforced spendthrift trusts. *Wagner v. Wagner*, 244 Ill. 101, 91 N.E. 66, 70 (1910); *Newcomb v. Masters*, 287 Ill. 26, 122 N.E. 85, 87 (1919); *Crane v. Illinois Merchants Trust Company*, 238 Ill.App. 257, 262, 1925 WL 4524 (1st Dist.1925). Since no special language is required to create a spendthrift trust, Restatement (Second) of Trusts § 152 cmt.c (1959), a trust containing antialienation or spendthrift provisions does not automatically qualify as spendthrift trust. *In re Balay*, 113 B.R. 429, 438 (Bankr.N.D.Ill.1990); *see also In re McCullough*, 259 B.R. 509, 517–18 (Bankr. R.I.2001). Rather, once confronted with a spendthrift provision in a trust, the court must determine that the beneficiary does not have unregulated dominion and control over or right to distribution from trust for the trust to qualify as a valid spendthrift trust. *In re Balay*, 113 B.R. at 438; *In re Rolfe*, 34 B.R. 159, 161 (Bankr.N.D.Ill. 1983); *accord In re McCullough*, 259 B.R. 509, 517 (Bankr.R.I.2001) (citing *In re Schwen*, 240 B.R. 754–757 (Bankr.D.Minn. 1999)); *In re Page*, 239 B.R. 755, 765–766 (Bankr.W.D.Mich.1999); *In re Hersloff*, 147 B.R. 262, 266 (Bankr.M.D.Fla.1992) (noting "something less than 'absolute' control over a spendthrift trust may destroy its spendthrift character"). Debtor maintains his conclusion that the spendthrift provisions of the Trust are valid,

2. Interveners have adopted Debtor's Memorandum of Law in Opposition to the Trustee's Motion for Summary Judgment as well as Debtor's Reply In Support Of His Cross Motion For Summary Judgment. Accordingly, the use of "Debtor" shall refer to the arguments of both Debtor and Interveners.

arguing that despite being the primary life beneficiary he lacks sufficient dominion and control over the Trust corpus to enable him at any time take the whole of the Trust corpus for himself.

■ The general rule is that "[i]f the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid." Restatement (Second) of Trusts § 153(2). If the beneficiary may call for the principal, or can take it as needed, the restraint on alienation is invalid. *Id.* at cmt. c. Thus, the issue present here is whether it was the Settlor's intent expressed in terms of the Trust itself to allow Debtor as sole trustee and primary life beneficiary to take the entire principal at his sole discretion. As earlier noted, the Trust itself provided:

"The trustee may in its discretion pay to my spouse, or for his benefit, so much or all of the principal of the Family Trust as the trustee from time to time determines to be required or desirable for his health, maintenance and support. The trustee need not consider the interests of any other beneficiary in making distributions to my spouse or for his benefit." (Trust Art. IV, ¶ 2).

■ When construing a trust, Illinois courts apply the same rules that apply to the construction of wills. *Harris Trust and Savings Bank v. Donovan*, 145 Ill.2d 166, 163 Ill.Dec. 854, 582 N.E.2d 120, 123 (1991). The first purpose in construing a trust is to discover the settlor's intent from the trust as a whole, which the court will effectuate if it is not contrary to public policy. *Id.* The cardinal rule of will construction is the ascertainment of a settlor's intention from the will itself. *In re Estate of Kirchwehm*, 211 Ill.App.3d 1015, 156 Ill.Dec. 375, 570 N.E.2d 851, 854 (1991). Since one particular will or trust is not usually identical to another, results in other cases are seldom of controlling importance in determining a testator's intent. *Harris Trust*, 163 Ill.Dec. 854, 582 N.E.2d at 123–24.

Here, the Trust's discretionary provision allows the Trustee, who is also the sole life beneficiary, to make payments to himself or for his benefit so long as they are (1) for the purposes of "health, maintenance and support" and (2) "required or desirable." If the Trust had only used the terms "[as] required [for] health, maintenance and support", such a standard limiting discretion would likely be acceptable under Illinois law. *Rock Island Bank & Trust Co. v. Rhoads*, 353 Ill. 131, 187 N.E. 139, 144 (1933) (intimating that a discretionary provision would have placed sufficient restriction on the beneficiary if it had used "comfort" alone to limit the beneficiary's access). The problem here, arises from the settlor's use of the additional phrase "required or desirable," which is part of the authority to pay to himself "for his benefit, so much or all of the principal of the Family Trust as the trustee from time to time determines to be required or desirable for his health, maintenance and support." The next sentence specifies that in paying himself, he need not consider interests of other beneficiaries.

Debtor argues that despite that power in the Trust his discretionary right to take from the corpus is not unfettered, but is restricted to what is reasonably related to payments for his and the remaindermen's health, maintenance, and support. In support of this argument Debtor argues that not only must he exercise his discretion in making payments with reasonable care, skill, and caution, but that any breach of his duty can be challenged by the remaindermen. That argument fails for two reasons.

■ First, the trustee is bound by no ascertainable standard according to the terms of the Trust to limit his disposition of the Trust corpus. As earlier stated, the objective is to discover the settlor's intent from the trust as a whole and effectuate it so long as it comports with Illinois public policy. To this end, the Settlor's intent should be determined by perusing the words used in the will for their plain meaning before applying rules of construction. *Hoge v. Hoge*, 17 Ill.2d 209, 161 N.E.2d 117, 119 (1959). The generally accepted meaning of the term "desirable" is "worth having" or "pleasing," Webster's New World Dictionary (3d ed.1988); and "worth having and wanting," Random House Dictionary of the English Language (2d ed.1987). What one requires or needs economically is far different from what one in unfettered discretion desires or finds "worth having" or "pleasing."

The settlor's use of the word "desirable" in the Trust at issue here is akin to the testator's use of "satisfaction" in *Rock Island*. In that case, the testator granted a life estate to his widow adding a provision granting her as life tenant " 'with full authority to use and dispose of so much of the same as may in her judgment be necessary for her comfort and satisfaction in life.' " *Rock Island*, 187 N.E. at 141–142. Pointing to the ordinary meaning of "satisfaction," the Illinois Supreme Court held that the provision gave the life tenant "unlimited discretion to disposed of the corpus" curtailed only by what she deems within "contentment, gratification"—the common meaning of satisfaction. *Id.* It is thus well established under Illinois law that the term of "satisfaction" does not constitute a sufficient restraint on a beneficial interest to prevent the beneficiary to receive the corpus. The term "desirable" fails in the same respect.

Second, when all clauses of the instrument are given effect, the only reasonable interpretation of the instrument as a whole is that the settlor intended Debtor to have complete dominion and control over the corpus. Here, the settlor has created different discretionary standards for the trustee to follow in order to invade the corpus to make payments to beneficiaries. That is, the trustee is permitted to invade the corpus and make payments for life, maintenance, and support as "required or desirable" for himself as primary life beneficiary, yet he "may in his discretion" pay out as "required" for the health, education, maintenance, and support of other beneficiaries. Additionally, when making distributions to himself, Debtor as sole trustee, "need not consider the interests of any other beneficiary." In light of the difference between the discretionary standard granted to the trustee for the different classes of beneficiaries it is clear that the settlor's intent was to confer an unfettered discretion upon the trustee's power to invade the corpus for payments to himself. Furthermore, any construction finding this clause to be the equivalent of the discretionary standard relating to the other beneficiaries would effectively disregard the settlor's use of the term "desirable" in Article IV, and would create restrictions on the settler-decedent's expressed intention that the trust be administered for the primary benefit of her husband.

■ In support of his position that an ascertainable limiting standard exists in the Trust, Debtor argues that he may only invade the corpus as is reasonably related to the "health, maintenance and support" of all beneficiaries. Illinois courts look to gather the settlor's intention from a will as a whole, giving effect and meaning to each and every clause if possible. *See Sloan v. Beatty*, 1 Ill.2d 581, 116 N.E.2d 375, 379–82 (1953). Applying this principle, it can-

not be found, as Debtor's argument suggests, that the settlor intended the same standard apply when the trustee wishes to invade the trust principle. The disparity between the two standards prescribed by settlor for her husband and other beneficiaries demonstrates a compelling inference that the settlor intended to facilitate Debtor's unfettered ability to make distributions from the principal to himself. This reading is guided by the rule that courts must avoid treating language used by the testator as surplusage or rendered void or insignificant. *Weilmuenster v. Swanner*, 404 Ill. 21, 87 N.E.2d 756, 757–58 (1949). Clearly, the settlor's use of "desirable" in ARTICLE IV paragraph 2(b) of the Trust to qualify Debtor's ability to get at the corpus for his own use is meaningful because just two sentences later the trustee's discretion in using the principal for the other beneficiaries is limited by what is "required." Moreover, the settlor's use of "as then constituted" to pass the vested remainder upon Debtor's death demonstrates her intent to allow Debtor the possibility of exhausting all of the corpus during his lifetime.

By vesting control of the trust in its primary lifetime beneficiary and granting him complete discretion to make payments to himself, the Trust reveals that settlor's primary dispositive intention was the preservation of her residuary estate for benefit of her husband, rather than an intent to grant identical beneficial interests to other beneficiaries. The upshot here is that Debtor, as a primary life beneficiary with discretion to invade the corpus of a spendthrift trust for any purpose and to any extent and at any time he deems desirable, invalidates the alleged spendthrift character of the Trust.

 In an effort to save the spendthrift trust provision, Debtor argues that despite his admittedly broad control over trust principal, any breach of his duty can be challenged by the Interveners as beneficiaries to the Trust. This argument, however, assumes what it seeks to prove; whether the other vested beneficiaries can maintain an action against the Debtor as sole trustee depends on whether Debtor can possibly abuse his discretion under terms of the Trust. In other words, since the settlor failed to "confine h[is] discretionary powers, there is no duty incumbent on us to seek for reasons to limit their exercise." *Rock Island*, 187 N.E. at 142–43 (quoting *Dana v. Dana*, 185 Mass. 156, 70 N.E. 49, 50 (1904)). Moreover, the case law on which Debtor relies merely stands for the general rule that contingent beneficiaries may have a cause of action for breach of fiduciary duty against a trustee for violating the prudent investor rule and thereby leaving other contingent beneficiaries without adequate income. *See Giagnorio v. Emmett C. Torkelson Trust*, 292 Ill.App.3d 318, 226 Ill.Dec. 693, 686 N.E.2d 42 (1997).

Above all, by vesting control of the Trust in its lifetime beneficiary who is the Debtor, the Trust does not comport with the function of spendthrift trusts: that they deny the beneficiaries full control over the trust. As sole trustee, he could take payment to himself from the Trust corpus for any reason that he deemed "desirable" for his health, maintenance, and support. The debtor, as trustee, could therefore have distributed the entire principal to himself at any time in his sole discretion. Whatever would remain in the Trust at the Debtors death was to pass to residuary beneficiaries. The remainder interests in the Trust were subject to complete divestment because the Debtor trustee had power to distribute all Trust assets to himself and effectively terminate the Trust during his lifetime. The residuary beneficiaries' expectancy of receiving the

corpus of the Trust upon his death was wholly contingent upon whether anything would be left at that time.

█ The underlying purpose of a spendthrift trust is to provide maintenance and support of another while protecting the beneficiary from squandering the principal or from her own incapacity. *Newcomb v. Masters*, 287 Ill. 26, 122 N.E. 85, 87 (1919). Yet, regardless of that purpose, the rationale which prevents creditors from reaching the principal is that the beneficiary cannot reach it. Here, it would strain both logic and the law to recognize and enforce a spendthrift trust that allowed the trustee-beneficiary, the spouse that Testator sought to protect, to exhaust the principal to the extent he deemed "desirable." While inserting spendthrift trust language into the Trust, the Testator also gave her trustee-beneficiary so much discretion as to make the Trust corpus effectively his property when he filed in bankruptcy.

### Conclusion as to the Spendthrift Trust

The plain language of Judith McCoy's will and trust unambiguously evinced an intent to give her husband the Debtor unbridled access to the corpus of the Trust which was implemented by the will. Since under terms of the Trust the Debtor could make payments to himself from the corpus to any extent that he alone determined "desirable," the only reasonable interpretation is that the settlor intended Debtor as sole trustee to have unfettered dominion and control over the Trust. Therefore, the Trust property is such that Debtor "in bankruptcy has the unfettered ability to possess and own [it]" and such property is therefore not protected by the exclusionary language of Section 541(c)(2). *In re Rolfe*, 34 B.R. at 161. Accordingly, the Trust property belongs to the bankruptcy estate and the Trustee will be granted Summary Judgment on Count IV of his Complaint on Count I of the Interveners' Cross Complaint, and on Debtor's Cross Motion for Summary Judgment on those Counts.

### Counts I to III of Trustee's Complaint: Self–Settled Trust; General Power of Appointment; Merger

Because the foregoing conclusion on the validity of the Spendthrift/Anti-alienation provisions is dispositive on whether the corpus of the Trust is property of Debtor's bankruptcy estate, Counts I to III of the Trustee's complaint need not be addressed and appear to be moot. If dismissed for that reason, such dismissal shall be without prejudice pending possible higher court review of the Counts ruled on.

### Count V: Post Petition Receipts by Debtor

█ Count V of the Trustee's Complaint seeks an accounting for and turnover of the assets and income Debtor received from the Trust during the 180–day period following the petition date—January 28, 2000, through July 26, 2000. Since property of the Trust has been found to belong to Debtor's bankruptcy estate, the Trustee is clearly entitled to an accounting for estate property at the time of the bankruptcy filing and thereafter.

Debtor argues that relief under Count V should be limited to $15,000, since this is the amount of the distribution debtor made to himself from the Trust within the 180–day period. Debtor concedes that he disbursed $53,000 from the Trust during the period in question, but argues that $25,000 of that amount was an investment loan; $10,000 was in the form of discretionary disbursements to beneficiaries Marian McCoy and Robert McCoy for their maintenance, and support; $3,000 constituted a loan to Debtor that has been repaid; and payments for health, mainte-

nance, and support to himself amounted to $15,000.

Conversely, the Trustee argues that Debtor was entitled to assets from the Trust within the Bequest Period in the amount of at least $52,000. The Trustee argues that $15,985.10 was paid from the Trust for IRS and foreign taxes, which may ultimately be refunded from overpayment of actual tax obligations. The Trustee further disputes that the $3,000 was a loan made from the Trust to Debtor. In addition, he disputes that $15,000 was paid to Debtor for his health, maintenance, and support.

The ownership of the Piano is unclear. It is undisputed that the Tax Return for the Estate includes the Piano as "Description of property interests passing to surviving spouse." Trustee's 402.M at ¶ 84. It is further undisputed that Debtor did not list the Piano as an asset on his Chapter 7 Schedule of Assets as last amended. Trustee's 402.M at ¶ 85. In addition, on December 31, 2000, the Piano was valued at zero on the Trust list of assets, but the parties agree that the Trust did not purchase the Piano from Debtor. Trustee's 402.M at ¶ 86; Trustee's 402.M at ¶ 92; Intervener's at 86. Interveners, however, contend that the value of the Piano was originally included as an asset of the Trust at the time of its creation. Interveners' 402.N. 86.

Neither party has set forth undisputed facts demonstrating the exact amount that Debtor received or was entitled to receive during the 180 day period. Indeed, through their statements of fact, the parties have acknowledges or shown that genuine issues of material fact remain with respect to the amount of Debtor's post-petition receipts from the Trust, the amount of Debtor's payment as trustee of taxes owed by the Trust, and whether the Piano is property of the Trust. *See* Debtor's 402 add'l at ¶¶ 142–147; Trustee's

402.M at ¶¶ 99; Trustee's 402.N at ¶¶ 142–147. Both parties make assertions throughout their statement of facts under Local Rule 402 that are not sufficiently supported by the record or are countered by the opposition. At bottom, although it is undisputed that $53,000 reflects the aggregate "amount paid" by Debtor from the Trust during the 180 day period, the parties are in disagreement with respect to how much of the $53,000 was received by Debtor or how much he was entitled to receive. Debtor's 402.N(3)(b) at ¶¶ 142–44, 147; Trustee's 402.M at ¶¶ 142–44, 147. Thus, under Count V of the Trustee's Complaint, material issues of fact exist as to what and how much should be accounted for. However, since the Trust property and income received post-bankruptcy belong to the estate, all assets and income since that date must be accounted for. Judgment ordering such accounting therefore must be entered, and the factual issues set for trial.

## CONCLUSION

For the foregoing reasons, by separate order Debtor's Motion for Summary Judgment is denied, Interveners' cross Motion for Summary Judgment is denied, and Count I of the Interveners' Cross Complaint will be dismissed. The Trustee's Motion for Summary Judgment is allowed on Counts IV and V of his Complaint, and Counts I to III of the Trustee's Complaint will be set for status to see if the Trustee still seeks to pursue them. Trial will be set on the accounting that judgment as to Count V will require. Undisputed facts Nos. 1 through 84 set forth herein above will pursuant to Rule 7056 Fed.R.Bankr.P. [Rule 56(d) Fed.R.Civ.P.] be deemed established for any trial held in this Adversary proceeding.