# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Johnessee v. Schnepf*, 2012 IL App (4th) 110767

---

| | |
|---|---|
| Appellate Court Caption | CONNIE JOHNESSEE, DOROTHY SMITH, BRENDA JOHNSON, and JOE SCHNEPF, Plaintiffs-Appellants, v. LYNDLE SCHNEPF; JOHN SCHNEPF; CAROLYN SCHAFFER; and RAYMOND SCHNEPF, Individually and as Successor Trustee of the MALETA MAXINE SCHNEPF FEBRUARY 2001 TRUST, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0767 |
| Argued | March 28, 2012 |
| Filed | April 6, 2012 |
| Rehearing denied | May 8, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the purported modification of a land trust by the settlor's removal of plaintiffs as beneficiaries, the trial court's orders granting defendant's motions to dismiss and for summary judgment were reversed and the cause was remanded with directions to reconsider plaintiffs' motions for judgment on the pleadings and summary judgment based on the appellate court's finding that the trust was not an amendable land trust, since the language of the trust reflected the settlor's intention that all of the property placed in the trust would remain in the trust until it was distributed to the beneficiaries according to the terms of the trust. |
| Decision Under Review | Appeal from the Circuit Court of Pike County, No. 09-MR-47; the Hon. Thomas J. Brannan, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | John B. Leonard (argued), of Mt. Sterling, for appellants. |
| | Mark S. Cochran and Michael G. Barton, both of Bellatti, Barton & Cochran, LLC, of Springfield, and William H. Strang (argued), of Strang & Parish, Ltd., of Jerseyville, for appellees. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. |
| | Presiding Justice Turner and Justice Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs appeal, arguing (1) the trial court's determination the Maleta Maxine Schnepf February 2001 Trust (Trust) is an amendable Illinois land trust was erroneous as a matter of law based upon the pleadings in this case; (2) the court erred in denying plaintiffs' motion for judgment on the pleadings and motion for summary judgment; and (3) the court erred in ruling on the competing motions for summary judgment because plaintiffs were denied an opportunity to be heard on either of the competing motions. We reverse the court's orders granting defendant Raymond Schnepf's motions to dismiss and motions for summary judgment and remand this case for further proceedings with directions to reconsider plaintiffs' motions for judgment on the pleadings and summary judgment based on our finding the Trust was not an amendable land trust.

¶ 2                                     I. BACKGROUND
¶ 3    As this appeal does not involve counts II through V of plaintiffs' complaint, we will not discuss those portions of plaintiffs' complaint. In December 2009, plaintiffs filed a complaint for declaratory judgment against defendants. In count I, plaintiffs alleged Maleta created the Trust on February 1, 2001. Maleta transferred certain property into the Trust by a deed in trust. Plaintiffs and defendants are all of Maleta's living children. Plaintiffs allege they were beneficiaries of the Trust.

¶ 4    On May 12, 2005, Maleta purportedly executed a modification to the Trust, which modified the beneficiaries of the Trust. This modification removed plaintiffs as beneficiaries of the Trust. The Trust did not contain an express provision granting any person the power to alter, amend, or modify the trust. As a result, plaintiffs argued the modification should be ignored and the Trust read as it was originally drafted, with the plaintiffs as beneficiaries of the trust.

-2-

¶ 5    Plaintiffs' complaint also contained alternate counts. In plaintiffs' alternate count I, plaintiffs alleged the act of crossing out the names of the plaintiffs and defendant Carolyn Schaffer was not a valid method of removing plaintiffs and Carolyn Schaffer as beneficiaries of the Trust, assuming Maleta had the legal authority to execute the modification. In plaintiffs' second alternate count I, plaintiffs alleged:

"even if Maleta *** had the legal authority to execute the Modification to Trust Agreement and Declaration of Trust, said Modification, on the information and belief of Plaintiffs, was not the free and voluntary act of Maleta *** in that Defendants John Schnepf or Raymond Schnepf pressured and forced her into executing the said Modification."

In plaintiffs' third alternate count I, plaintiffs alleged Maleta was either pressured to execute the modification or she neither personally crossed out plaintiffs' names nor initialed the same. On information and belief, plaintiffs alleged the initials were forgeries done by an unknown third party.

¶ 6    In April 2010, plaintiffs filed a motion for judgment on the pleadings with regard to count I. According to the motion, the allegations denied by defendants were matters that could be determined by the trial court after the court reviewed the relevant trust documents. Plaintiffs argued the trust could not be modified because the trust did not reserve the right to modify.

¶ 7    On May 17, 2010, Raymond filed a motion for summary judgment as to count I. Raymond agreed with plaintiffs' motion for judgment on the pleadings no genuine issues of fact existed. The court only needed to decide "the narrow legal issue of whether the Modification to Trust Agreement and Declaration of Trust dated May 12, 2005[,] *** was a valid amendment" to the Trust. According to Raymond's motion, the Trust was a specialized " 'Illinois land trust' " in which the trustee held both legal and equitable title to the farmland with the interest of the beneficiary being personal property. Raymond argued the Trust was readily amendable during Maleta's lifetime despite the lack of a reservation of the right to modify because it was an Illinois land trust.

¶ 8    Raymond also filed a motion for summary judgment on plaintiffs' alternate count I, stating the only issue in dispute was a legal question, *i.e.*, whether the act of crossing out the names of plaintiffs and defendant Carolyn Schaffer was a valid method of removing the same individuals as beneficiaries. According to defendant's motion:

"It is the sworn testimony of Attorney John Coonrod that when he met with Maleta Maxine Schnepf to sign the Modification to Trust Agreement and Declaration of Trust, she understood that her actions in crossing out the names of Plaintiffs and Defendant Carolyn Shaffer [*sic*] and initialing those changes immediately prior to signing the modification was an effective way to amend the document and that she intended for the deletions to be recognized as controlling."

¶ 9    Raymond also filed a motion to dismiss plaintiffs' second alternate count I, alleging an absence of well-pleaded facts.

¶ 10    In addition, Raymond filed a motion for summary judgment on plaintiffs' third alternate count I, arguing "the cause of action asserted in Paragraph 16A of Plaintiffs' Third Alternate

Count I is the same cause of action asserted in Plaintiffs' Second Alternate Count I and should be stricken from Plaintiffs' Third Alternate Count I." Raymond again cited to the sworn testimony of attorney John Coonrod quoted above.

¶ 11    On May 18, 2010, plaintiffs filed a motion for summary judgment as to count I. Plaintiffs restated and incorporated the statements and arguments contained in their motion for judgment on the pleadings.

¶ 12    In August 2010, the trial court found the Trust was an amendable land trust. The court stated the term "land trust" is given the same definition by the Land Trust Beneficial Interest Disclosure Act (765 ILCS 405/1 to 3 (West 2008)), the Land Trustee as Creditor Act (765 ILCS 415/0.01 to 4 (West 2008)), the Land Trust Recordation and Transfer Tax Act (765 ILCS 420/1 to 4 (West 2008)), and the Sale of Residential Property Subject to Land Trust Act (765 ILCS 430/0.01 to 2 (West 2008)). The trial court stated in its order all four of these Acts define the term "land trust" as follows:

" 'Land Trust' means an arrangement under which the title, both legal and [equitable], to real property, is held by a trustee and the interest of the beneficiary is personal property and under which the beneficiary or any person designated in writing by the beneficiary, has the exclusive power to direct or control the trustee in dealing with the title and the exclusive control of the management, operation, renting, and selling of the trust property together with the exclusive right to earnings, avails and proceeds of said property is in the beneficiary of the trust."

(We note this is the definition of the term "Land Trust" for purposes of the Sale of Residential Property Subject to Land Trust Act (765 ILCS 430/0.01 to 2 (West 2008)), but it is not the definition provided for the term "Land Trust" by the other three Acts. See 765 ILCS 405/1 (West 2008); 765 ILCS 415/2(a) (West 2008); 765 ILCS 420/2 (West 2008).) While the court mistakenly found the four acts all provide the same definition for the term "land trust," the court appears to have ruled based on the following elements it found constitutes a land trust.

¶ 13    The trial court stated the four common elements of a land trust are:

"1. The legal and equitable title to the real estate is held by a trustee;

2. The trustee has no duties or powers other than to follow the directions of the beneficiaries with respect to the title of the real estate[;]

3. The beneficiaries are entitled to sole possession, control and management of the real estate and to all of the income and avails arising therefrom[;] and

4. The beneficiary's interest is deemed to be personal property."

The court found:

"Each of the forgoing elements is present in the [February 2001 Trust]. Though the term 'Land Trust' is nowhere within the trust agreement before the Court, or the [d]eeds of conveyance, the Court finds that the trust is, in fact and as a matter of law, an Illinois Land Trust. The trust before this Court clearly contains the indicia of an Illinois Land Trust."

¶ 14    The trial court recognized the Trust contained (1) articles that appear contradictory (III,

IV, IX, and X) and (2) no explicit authority for any particular person to direct the trustee. However, the court interpreted the trust to implicitly give " 'the Grantors and/or beneficiaries [of the Trust]' " or some other party empowered by the grantors and/or beneficiaries the power to direct the trustee. According to the court:

> "In the Court's reading of the Trust Agreement, nowhere is there direct authority given or reserved to direct the trustee. Paragraph III(a) clearly gives to Maleta Maxine Schnepf the power to assign or deal with all of the rights and interests of the beneficial interest, but Paragraph IV limits the interest of a beneficiary 'to manage and control said property' *** and 'the right to receive the proceeds from rentals therefrom'. However, it is apparent to the Court some authority must have been envisioned, or the language would not have been included. Paragraph IX of the trust agreement speaks of 'person then entitled to direct the trustee' and Paragraph X states that 'the trustee will deal with said property only when authorized by the Grantors and/or beneficiaries hereunder ***.'

> Significantly, the Deeds in Trust executed on the 1st day of February 2001 and the 12th day of May[ ] 2005 include language which obviously envision that the trustee may be authorized to perform certain acts. See pages 2-4 of the Deed in Trust.

> Combining the language of the Trust Agreement together with the language of the Deeds in Trust, and the inherent or implicit authority as evidenced by Paragraph IX and X aforesaid, it is the finding of the Court, the owners of the beneficial interest possessed the authority and power to direct the trustee and the power to terminate the trust and take a conveyance, and create a new land trust with the changes desired.

> In response to Plaintiffs' argument that the Trust Agreement and Declaration of Trust does not specify who is to have the power of direction, it is the finding of the Court that Paragraph X specifies who has such power or authority, 'the Grantors and/or beneficiaries hereunder, or such other party as the Grantors or beneficiaries shall empower to so direct ***.' "

¶ 15 On August 30, 2010, the trial court denied plaintiffs' motion for judgment on the pleadings and their motion for summary judgment and allowed Raymond's motion for summary judgment on count I to the extent the Trust is an Illinois land trust and was fully amendable during Maleta's lifetime. The court made no finding whether the modification made to the February 2001 Trust on May 12, 2005, was a valid amendment. The court denied Raymond's motion to dismiss plaintiffs' second alternate count I and motion for summary judgment on plaintiffs' third alternate count I because questions of fact remained.

¶ 16 On April 13, 2011, the trial court granted Raymond's motion to dismiss plaintiffs' second alternate count I, finding plaintiffs failed to allege sufficient facts to state a cause of action. The court gave the plaintiffs leave to file amended pleadings within 30 days.

¶ 17 On July 18, 2011, the trial court granted Raymond's amended motion for summary judgment as to plaintiff's third alternate count I.

¶ 18 On July 25, 2011, the trial court entered an order, finding no just reason to delay enforcement or appeal of its rulings in regard to count I, alternate count I, second alternate count I, and third alternate count I of plaintiffs' complaint and granted plaintiffs leave to appeal the same. The court stayed counts II through V of plaintiffs' complaint pending

appeal.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 Plaintiffs make the following arguments on appeal. First, plaintiffs argue the trial court erred in concluding the Trust is an Illinois land trust. Second, plaintiffs argue the court's rulings on the competing motions for summary judgment were improper because plaintiffs were denied an opportunity to be heard on either of the competing motions.

¶ 22 A. Jurisdiction

¶ 23 This court has jurisdiction over the trial court's orders with regard to count I, alternate count I, second alternate count I, and third alternate count I pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). However, we make no comment on other pending matters not subject to the trial court's Rule 304(a) finding.

¶ 24 B. February 2001 Trust

¶ 25 The primary issue before this court is whether the trial court erred in classifying the Trust as an amendable land trust. Whether the Trust classifies as a land trust that could be amended by Maleta after its creation is dependent on the language of the Trust, which is the best indicator of Maleta's intent when she created the Trust. Our supreme court has given the following direction with regard to determining a grantor's intent:

"The intention of the settlor is to be ascertained by examining the entire trust and by giving to the words employed their plain and ordinary meaning. [Citation.] If possible, the court should construe the will or trust so that no language used by the testator is treated as surplusage or rendered void or insignificant." *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172, 582 N.E.2d 120, 123 (1991).

With these principles in mind, we look to the language of the trust itself to determine Maleta's intent.

¶ 26 Based on its reading of the trust, the trial court allowed Raymond's motion for summary judgment to the extent the Trust is an Illinois land trust and was fully amendable during Maleta's lifetime. While it is clear the trial court gave the issues before it thoughtful consideration, we review rulings granting motions for summary judgment *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323, 1326 (1995).

¶ 27 Plaintiffs argue the trial court erred in finding this was an amendable land trust. According to plaintiffs, this was not a land trust, and Maleta had no authority to modify or terminate the Trust because she did not reserve that authority in the trust agreement. Plaintiffs point out the settlor of a trust "cannot modify or revoke a trust unless he has reserved the power to do so in the trust agreement." *Williams v. Springfield Marine Bank*, 131 Ill. App. 3d 417, 419, 475 N.E.2d 1122, 1124 (1985).

¶ 28 The Trust did not enumerate a reserved power of modification. In addition, the term

"land trust" is not in the Trust. Finally, the Trust contained no express language giving anyone the right to direct the trustee with regard to title to the property held in the Trust. When a trust contains express language giving someone the power to direct the trustee with regard to title to the property held by the trust, the individual holding that power of direction as to title can direct the trustee to sell all of the property held by the trust. *Hoxha v. LaSalle National Bank*, 365 Ill. App. 3d 80, 87, 847 N.E.2d 725, 730 (2006) ("A land trust beneficiary may contract to sell real property that is the subject of a land trust *as long as the trust agreement vests the beneficiary with the sole right to direct the trustee to convey title*." (Emphasis added.)). The Trust at issue here granted no one the right to direct the trustee to do anything with regard to the title to the property held by the trust.

¶ 29    All of the parties in the trial court looked to the expertise of Henry W. Kenoe on the subject of land trusts. In Kenoe's treatise, *Kenoe on Land Trusts*, which was last published in 1989 by the Illinois Institute for Continuing Legal Education, Kenoe stated the typical land trust form of trust agreement, which he included in the treatise and will be discussed later in this order, does the following:

"It *** identifies the trust by the name of the trustee, the date of the instrument, and a trust number. It is in this instrument that the rights, powers, and authorities of the trustee and beneficiary are delineated and expressed.

The trust agreement includes a legal description of the property, other details such as its common address, and a description of the improvements. It also names and designates the beneficiaries, using a variety of forms which are more extensively discussed in §§ 2.4-2.18. It expressly provides that the beneficiary shall have no interest whatsoever in either the legal or equitable title to the real estate but that this interest is to be confined solely to rights of management, operation and control and to the receipt of proceeds from rents, mortgage financing and sales. Most importantly, the trust agreement expressly declares the interest of the beneficiary to be personal property, and a variety of consequences result from this recognition.

*The power of direction, or the authority to direct the trustee to act with respect to the trust property, is provided for in the trust agreement, and although a variety of arrangements are possible *** the usual trust vests this authority in the beneficiaries*." (Emphasis added.) Henry W. Kenoe, *Kenoe on Land Trusts* § 2.3, at 2-10 to 2-11 (Ill. Inst. for Cont. Legal Educ. 1989).

¶ 30    Kenoe makes clear the specifically enumerated power expressed in the trust to direct the trustee with regard to title to the property is what allows the person holding that power to amend a land trust, even when the terms of the trust do not address whether the trust can be amended.

"A typical land trust agreement as in § 2.3 contains neither explicit language authorizing amendments to the agreement nor any expressed prohibition of such action. *As a practical matter, since nearly every land trust can be determined by a direction to convey out and a new land trust created more compatible with the wishes of the beneficiaries, land trustees accept amendments to the trust agreement which impose no unacceptable burdens or obligation upon the trustee.* Such an instrument, when executed

by the appropriate beneficiaries and lodged with the trustee, will effectively modify or supplement the original trust agreement." (Emphasis added.) Henry W. Kenoe, *Kenoe on Land Trusts* § 4.19, at 4-33 (Ill. Inst. for Cont. Legal Educ. 1989).

The express language of the Trust at issue in this case did not provide the beneficiary or anyone else with any power to direct or control the trustee in dealing with the title to the property held by the trust. Without the express power to direct the trustee with regard to the title to the property held by the trust, the Trust in this case could not be terminated simply by a direction from Maleta to convey the property out of the Trust. Neither the express nor practical reason for allowing amendments is present in this case, *i.e.*, the Trust contained neither an express provision allowing amendments nor an express provision giving any one other than the trustee power of direction over the title to the Trust property. As a result, Maleta had no power to amend this Trust.

¶ 31    The trial court focused on articles III, IV, IX, and X in finding Maleta did retain a power of direction. Article III of the February 2001 Trust states:

"III. When said trustee has taken title thereto, or to any other real estate deeded to her as trustee hereunder, said trustee will hold it for the uses and purposes herein set forth. The following named persons shall be entitled to the earnings, avails, and proceeds of said real estate according to the respective interests herein set forth, to wit:

A. To Maleta Maxine Schnepf the entire beneficial interest hereunder, during her lifetime, with full power to assign or deal with all of the rights and interests of the beneficial interest.

B. Thereafter, to Lyndle G. Schnepf the entire beneficial interest hereunder, during his lifetime, without authority to assign or deal with said rights and interests of the beneficial interest."

Article IV states:

"IV. It is understood and agreed between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power to manage and control said property as hereinafter provided, and the right to receive the proceeds from the rentals therefrom, and that such right shall be deemed to be personal property, and *may not be assigned or otherwise transferred*." (Emphasis added.)

Article IX states:

"IX. The trustee may at any time resign herein, by sending by registered mail, a notice of his intention to do so to the beneficiaries. Such resignation shall become effective ten days after the mailing of such notice. In the event of resignation, a successor may be appointed by the person then entitled to direct the trustee, and the trustee shall thereupon convey the trust property to such successor. In the event that no successor is so named, within ten days after the mailing of said notice, then the trustee may convey the trust property to the beneficiaries in accordance with their respective interests hereunder, or the trustee may, at their option file a bill for appropriate relief from a court of competent jurisdiction. The trustee, not withstanding such resignation, shall continue to have a first lien upon the trust property for his costs, expenses, and attorney's fees and for his

reasonable compensation."

Article X states:

"It is understood and agreed by the parties that the trustee will deal with said property only when authorized to do so in writing by the Grantors and/or beneficiaries hereunder, or such other party as the Grantors or beneficiaries shall empower to so direct upon due notice to the trustee by the Grantors or beneficiaries of said power. The trustee shall not be required to inquire into the propriety of any such direction."

¶ 32    We do not read any of these articles in isolation or together to provide anyone with authority to direct the trustee with regard to the title to the property held in the trust. While we agree with the trial court's conclusion the "Grantors and/or beneficiaries" were given some power to direct the trustee, this power of direction was limited and clearly did not extend to matters involving title to the property held by the trust.

¶ 33    Under the trial court's interpretation of the February 2001 Trust, Lyndle G. Schnepf, who was to receive the entire beneficial interest of the trust while he was living after Maleta's death, would have been authorized to direct the trustee with regard to title to the property held in the trust had Maleta not amended the trust during her lifetime. This clearly goes against Maleta's intent as evidenced by the plain language of the trust, considering she severely limited Lyndle's rights with regard to the beneficial interest.

¶ 34    Article III(B) of the February 2001 Trust placed even greater restrictions on Lyndle than did article IV as it denied Lyndle authority "to assign or deal with said rights and interests of the beneficial interest." Maleta clearly did not intend for articles IX and X of the Trust to be read together to give Lyndle authority to direct the trustee with regard to the title to this property.

¶ 35    Looking at the February 2001 Trust as a whole, we find it was Maleta's intent as the grantor of this trust that the title to the property be held by the trust until both she and Lyndle were no longer living. This is evidenced both by the fact Maleta did not reserve to herself or anyone else the power to deal with the title to the property held by the trust until after both she and Lyndle were no longer living and by the restrictions she placed on beneficiaries in article IV. While she may have regretted this decision later, nothing in the Trust indicates she wanted herself or anyone else to have authority to initiate the transfer of title to the property held in the Trust when the February 2001 Trust was created.

¶ 36    While some of the language found in the Trust at issue in this case is very similar to language found in sample forms provided in Kenoe on Land Trusts, other language found in Kenoe's sample form is strikingly absent. For example, Kenoe's form states:

"IT IS UNDERSTOOD AND AGREED between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power *of direction to deal with the title to said property and* to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales, or other disposition of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such ***." (Emphasis added.) Henry W. Kenoe, *Kenoe on Land Trusts* § 2.3, at 2-12, Form

-9-

2 (Ill. Inst. for Cont. Legal Educ. 1989).

The italicized language above giving the beneficiary a power of direction to deal with title to the trust property is nowhere found in the February 2001 Trust. While article IV of the February 2001 Trust contains similar language to the paragraph above, the language "power of direction to deal with title to said property" is conspicuously absent.

¶ 37       Another important difference between the language suggested by Kenoe and the language found in article IV and article III(B) of the February 2001 Trust is how little authority Maleta wanted Lyndle to have with regard to the beneficial interest. This is in sharp contrast to the powers given to beneficiaries under Kenoe's form language.

¶ 38       Nowhere in the Trust is anyone other than the trustee given authority to do anything with the title to the property itself. Article XVI of the February 2001 Trust states:

> "This trust shall terminate upon the death of the latter beneficiary as set forth in Article II hereof. *At that time the trustee shall convert to cash that real estate relevant hereto and shall distribute the proceeds therefrom to my remaining children, in equal shares per stirpes.*" (Emphasis added.)

(It appears the reference to article II was a scrivener's error as article II concerns the trustee and named successor trustee. Based on our review of the Trust, the drafter must have intended to reference article III because the two beneficiaries are named in that article, not article II.) This language is very different from the language recommended by *Kenoe on Land Trusts*.

¶ 39       The language Kenoe recommends states: "*If any property remains in this trust* twenty years from this date, it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto under this trust agreement." (Emphasis added.) Henry W. Kenoe, *Kenoe on Land Trusts* § 2.3, at 2-14 (Ill. Inst. for Cont. Legal Educ. 1989). Unlike the language from the trust in our case, the land trust language recommended by Kenoe clearly recognizes the possibility the trust might no longer hold certain property. The same is not true with regard to the Trust in this case. Article XVI of the Trust reflects Maleta's intention all of the property placed in the trust would still be there after both she and Lyndle died.

¶ 40       As we have found the February 2001 Trust was not an amendable land trust, we need not address the trial court's other findings as those findings were based on the trial court's holding the February 2001 Trust was an amendable land trust.

¶ 41                               III. CONCLUSION

¶ 42       We reverse the court's orders granting Raymond's motions to dismiss and motions for summary judgment and remand this case for further proceedings with directions to reconsider plaintiffs' motions for judgment on the pleadings and summary judgment based on our finding the Trust was not an amendable land trust.

¶ 43       Reversed and remanded.