2025 IL App (4th) 250038-U

NO. 4-25-0038

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
September 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CONNIE JOHNESSEE, DOROTHEA SMITH, | ) | Appeal from the |
| BRENDA JOHNSON, and JOE SCHNEPF, | ) | Circuit Court of |
| Plaintiffs, | ) | Pike County |
| v. | ) | No. 09MR47 |
| LYNDLE SCHNEPF, JOHN SCHNEPF, CAROLYN | ) | |
| SHAFFER, and RAYMOND SCHNEPF, Individually | ) | |
| and as Successor Trustee of the Maleta Maxine Schnepf | ) | |
| February 2001 Trust, | ) | |
| Defendants, | ) | |
| | ) | |
| (John Schnepf and Raymond Schnepf, Defendants- | ) | |
| Appellants; Connie Johnessee, Dorothea Smith, and | ) | |
| Brenda Johnson, Plaintiffs-Appellees; Ben Shaffer, Eric | ) | Honorable |
| Shaffer, Tracy Brown, Jared Schnepf, and Riley Joe | ) | Talmadge "Tad" Brenner, |
| Howser, Appellees). | ) | Judge Presiding. |

---

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the circuit court's division and distribution determinations were consistent with the settlor's intent.

¶ 2    Defendants, John and Raymond Schnepf, appeal the circuit court's order determining (1) the proceeds from the Maleta Maxine Schnepf February 2001 Trust (Trust) should be divided into seven equal shares for the seven children of Maleta Schnepf who were living when the Trust was created and not awarded a life estate thereunder and (2) five shares of the Trust

proceeds should be distributed amongst the five surviving children and two shares should be distributed *per stirpes* to the descendants of the two deceased children. On appeal, John and Raymond argue the court misconstrued the language of the Trust in reaching its division and distribution determinations. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The Trust has been the subject of contentious litigation since 2009, which has made the circuit court intimately involved in its administration. This court addressed the Trust in two prior appeals. See *Johnessee v. Schnepf*, 2012 IL App (4th) 110767; *Johnessee v. Schnepf*, 2016 IL App (4th) 150162-U. Additionally, in several other appeals, this court addressed matters related to Maleta's property and estate, as well as orders of protection involving some of the parties to this appeal. See *Schnepf v. Schnepf*, No. 4-05-0817 (2006) (unpublished order under Illinois Supreme Court Rule 23); *Johnessee v. Schnepf*, No. 4-10-0285 (2011) (unpublished order under Illinois Supreme Court Rule 23); *Schnepf v. Schnepf*, 2013 IL App (4th) 120342-U; *Schnepf v. Schnepf*, 2013 IL App (4th) 121142. We note Justice McCullough aptly observed the following in a special concurrence and dissent in the appeal of the orders of protection: "This case is a good example of what many families do when property is involved and death ([Maleta's]) occurs: spend time and money fighting over property in which they were lucky to have any interest." *Johnessee*, No. 4-10-0285 (McCullough, J., specially concurring and dissenting). For this appeal, we limit the following background to the facts necessary for our decision.

¶ 5        In February 2001, Maleta created the Trust. At that time, she had eight living children, several of whom had children of their own. Maleta's children included John, Raymond, Connie Johnessee, Dorothea Smith, Brenda Johnson, Lyndle Schnepf, Carolyn Shaffer, and Joe

Schnepf. Maleta had another child, who died prior to the creation of the Trust, leaving no children.

¶ 6        The Trust included certain real estate and awarded life estates to Maleta and Lyndle. The Trust provided specific instructions concerning its termination:

> "XVI. This trust shall terminate upon the death of the latter beneficiary as set forth in Article [III] hereof. At that time the trustee shall convert to cash that real estate relevant hereto and shall distribute the proceeds therefrom to my remaining children, in equal shares *per stirpes*."

¶ 7        Maleta enjoyed the benefits of the Trust until her death in July 2008. Lyndle then did the same until his death in February 2022. Lyndle died without leaving any children. Prior to Lyndle's death, but after Maleta's death, Carolyn and Joe died. Carolyn left two children, Ben and Eric Shaffer. Joe also left two children, Tracy Brown and Jared Schnepf, as well as a grandchild, Riley Joe Howser, who was the son of Joe's deceased child, Tamara Schnepf.

¶ 8        Following the death of Lyndle, the then court-appointed special trustee of the Trust sold the real estate from the Trust. The special trustee then sought judicial determinations concerning the division and distribution of the Trust proceeds. John and Raymond argued the proceeds should be divided into five equal shares for the five surviving children of Maleta and then one share should be distributed to each of those children. Conversely, Connie, Dorothea, Brenda, Tracy, Jared, Riley, Ben, and Eric argued the proceeds should be divided into seven equal shares for the seven children of Maleta who were living when the Trust was created and not awarded a life estate thereunder and then five shares of the proceeds should be distributed amongst the five surviving children and two shares should be distributed *per stirpes* to the descendants of

the two deceased children. After considering the language of the Trust and the circumstances under which it was drafted, the circuit court agreed with the latter position and entered a written order setting forth its division and distribution determinations.

¶ 9        This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11        On appeal, John and Raymond argue the circuit court misconstrued the language of the Trust in reaching its division and distribution determinations. Connie, Dorothea, Brenda, Tracy, Jared, and Riley disagree. Ben and Eric take no position in this appeal.

¶ 12        The parties do not dispute the circuit court's interpretation or construction of the Trust is subject to *de novo* review. See *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 31 ("To the extent that we are called upon to review the trial court's interpretation of the terms of the trust, we will apply a *de novo* standard of review."); *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25 ("[T]his case concerns the construction of a trust, which is a question of law we also review *de novo*."). *De novo* review means we perform the same analysis a circuit court would perform and give no deference to the court's conclusions or specific rationale. See *Blagden v. McMillin*, 2023 IL App (4th) 220238, ¶ 40.

¶ 13        In construing a trust, "the goal is to determine the settlor's intent, which the court will effectuate if it is not contrary to law or public policy." *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574 (2009). "Courts search for intent by analyzing both the words used in the instrument and the circumstances under which they were drafted, including: the state of the [settlor's] property, his family, and the like." (Internal quotation marks omitted.) *Harris Trust & Savings Bank v. Beach*, 118 Ill. 2d 1, 3-4 (1987). "In determining this intent, courts

consider the plain and ordinary meaning of the words used, taking into consideration the entire document." *Citizens National Bank of Paris*, 235 Ill. 2d at 574. Additionally, "courts should give effect to each word and phrase and should decline to adopt a construction which would render any portion of the language meaningless or nonsensical." *Stein v. Scott*, 252 Ill. App. 3d 611, 615-16 (1993) (citing *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172-73 (1991)).

¶ 14    The Trust provision at issue in this case is as follows:

> "XVI. This trust shall terminate upon the death of the latter beneficiary as set forth in Article [III] hereof. At that time the trustee shall convert to cash that real estate relevant hereto and shall distribute the proceeds therefrom to my remaining children, in equal shares *per stirpes*."

In dispute from this provision is the meaning of the word "remaining." The word is not defined in the Trust, nor is it a commonly defined term in Illinois law.

¶ 15    John and Raymond maintain construing "remaining" to mean "surviving" is the only reasonable construction of the Trust provision. They assert such a construction (1) is consistent with the plain and ordinary meaning of the word "remaining" as it has been defined by various dictionaries; (2) is reinforced by the "[a]t that time" language of the provision; (3) is supported by persuasive case law, namely, *In re Berg's Estate*, 96 Pa. Super. 125 (1929); and (4) does not render any word of the provision meaningless.

¶ 16    Like the circuit court, we find construing "remaining" to mean "surviving" would be an unreasonable construction of the Trust provision, as it would render the "*per stirpes*" language found therein meaningless. "*Per Stirpes*," a well-established term in Illinois law, is a

term "used to specify the method of distribution of property." *Goodwine State Bank v. Mullins*, 253 Ill. App. 3d 980, 1006 (1993). That is, it is a term "used to designate the method of determining the shares to which the remaindermen are entitled." *Id.* The term specifically denotes "a taking by right of representation of that which an ancestor would take if living." *Id.*

¶ 17        John and Raymond assert the "*per stirpes*" language would not be rendered meaningless under their construction because it would provide that, if any of Maleta's children survived Lyndle but then died before the sale of the real estate and the distribution of the proceeds therefrom, their descendants would take *per stirpes*. However, even under their construction, the interest of the remainderman—the surviving children—would automatically vest at a particular moment, regardless of whether that moment be the death of Lyndle or the division and distribution of the proceeds by the trustee. Therefore, the *per stirpes* language would be meaningless.

¶ 18        *Berg's Estate*, relied upon by John and Raymond, is distinguishable in this regard. The instrument in that case, unlike the trust in this case, did not contain *per stirpes* language. See *Berg's Estate*, 96 Pa. Super. at 127. Likewise, *Goodwine State Bank*, cited by John and Raymond in their reply brief, is distinguishable. While the instrument in that case included *per stirpes* language, it identified the remaindermen as the " 'then[-]living descendants,' " not a particular generation of descendants like the trust in this case—the "children" of Maleta. See *Goodwine State Bank*, 253 Ill. App. 3d at 1003. Accordingly, neither of these cases supports the position of John and Raymond.

¶ 19        Therefore, we reject the construction proposed by John and Raymond as it would improperly render the "*per stirpes*" language meaningless.

¶ 20        John and Raymond further maintain construing "remaining" to mean the seven

children of Maleta who were living when the Trust was created and not awarded a life estate thereunder, the construction advocated by their fellow kin and adopted by the circuit court, is not a reasonable construction of the Trust provision at issue. They assert such a construction is (1) unsupported by the plain and ordinary meaning of the term "remaining" as it has been defined by various dictionaries and (2) makes the term "remaining" surplusage.

¶ 21        We find construing "remaining" to mean the seven children of Maleta who were living when the Trust was created and not awarded a life estate thereunder is a reasonable construction of the Trust provision based upon the language of the Trust and the circumstances under which it was drafted. At the time of the Trust's creation, Maleta had eight living children, several of whom had children of their own. In the Trust, Maleta awarded one of her children, Lyndle, a life estate. Maleta further directed, following the expiration of the life estates, the real estate in the Trust be sold and the proceeds therefrom be distributed to her remaining children, in equal shares *per stirpes*. Maleta's designation that the proceeds be distributed *per stirpes*, that is, "a taking by right of representation of that which an ancestor would take if living," indicates Maleta contemplated the possibility of a child dying before the termination of the Trust and desired for that child's descendants to take the child's share. See *id.* at 1006.

¶ 22        Contrary to the assertion of John and Raymond, construing "remaining" to mean the other children of Maleta who were living when the Trust was created and not awarded a life estate thereunder is not inconsistent with the definition of "remaining" provided in the Merriam-Webster online dictionary, which reads: "left over after a part has been destroyed, taken, used, or lost." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/remaining (last visited August 11, 2025). Such a construction refers to the

- 7 -

living children of Maleta who had not yet been addressed in the Trust. Similarly, construing the Trust provision in such a fashion does not make the term "remaining" surplusage, as it distinguishes between Lyndle, who received a life estate under the Trust, and the other living children who did not receive the same.

¶ 23        From the language of the Trust and the circumstances under which it was drafted, we find Maleta intended to leave the proceeds from the Trust equally to her seven children who were living when the Trust was created and not awarded a life estate thereunder and, in the event any of those children died before the termination of the Trust, the proceeds were to be distributed *per stirpes* to the descendants of the deceased children. We need not, therefore, resort to other rules of construction. See *Harris Trust & Savings Bank*, 118 Ill. 2d at 4 ("When, however, the instrument fails to make the settlor's *** intention clear, courts often resort to rules of construction to determine the meaning of the terms used in the document.").

¶ 24        We conclude the circuit court's division and distribution determinations were consistent with Maleta's intent.

¶ 25                                III. CONCLUSION

¶ 26        For the reasons stated, we affirm the circuit court's judgment.

¶ 27        Affirmed.